SCHWARK v LILLY

Docket No. 78-648. Submitted February 6, 1979, at Grand Rapids.—
Decided July 9, 1979. Leave to appeal applied for.

Naomi R. Schwark was killed and four of her children were
injured in an automobile collision. Her husband, Guy Schwark,
brought an action for himself, as administrator of his wife's
estate, and as next friend of the couple's four minor children,
three of whom were injured in the collision. Guy Schwark, III,
an adult child who was also injured, joined in the suit as a
plaintiff. Defendants were Max E. Lilly, the other driver,
Duane K. Wiltse, VFW Mecwarf Post 5319, and State Farm
Mutual Automobile Insurance Company. The alleged liability of
Wiltse and the VFW Post was premised upon violation of the
dramshop act. The plaintiffs' claims were dismissed, pursuant
to settlements, as to all the defendants except State Farm. The
Calhoun Circuit Court, Paul Nicolich, J., found that State Farm
was not entitled to set off from survivors' benefits Social Secu-
rity benefits received by plaintiffs, that State Farm was not
entitled to reimbursement of benefits paid from plaintiffs' re-
covery from the dramshop defendants, and that the survivors'
benefits due the plaintiffs were equal to Mrs. Schwark's take-
home pay. State Farm appeals. *Held:*

1. The setoff for Social Security benefits is enforceable.

2. The amount of survivors' benefits is to be determined by
the deceased's gross wages, minus the amount she would have
paid in taxes and minus an amount fairly representing her
personal consumption.

3. State Farm is not entitled to reimbursement from the
proceeds of the dramshop recovery because the dramshop de-
fendants' liability did not arise from the ownership, mainte-
nance or use of a motor vehicle.

Affirmed in part, reversed in part, and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] New Topic Service Am Jur 2d, No-Fault Insurance § 22.
[2] 73 Am Jur 2d, Statutes §§ 194, 225.
[3, 6] New Topic Service Am Jur 2d, No-Fault Insurance § 31.
[4] New Topic Service Am Jur 2d, No-Fault Insurance § 9.
[5] New Topic Service Am Jur 2d, No-Fault Insurance §§ 9, 14, 15.

T. M. Burns, J., concurred in all respects except that he would hold that survivors' benefits should not be reduced by the amount the deceased would have paid in taxes, as the statute does not expressly provide for such a deduction.

### Opinion of the Court

1. Insurance — Automobiles — No-Fault — Reductions in Benefits — Social Security Benefits — Statutes.

   The section of the no-fault insurance act which provides for a reduction in no-fault benefits in the amount of benefits received from state or Federal governments is constitutional as it relates to Federal Social Security benefits (MCL 500.3109[1]; MSA 24.13109[1]).

2. Statutes — Meaning — Judicial Construction.

   Judicial construction or attempted interpretation to vary the plain meaning of a statute is precluded where there is no necessity to reconcile conflicting statutes, where there is no absence of adequate operational definitions of relevant terms, and where the statutory language is plain and unambiguous.

3. Insurance — Automobiles — No-Fault — Survivor's Benefits — Reduction in Benefits — Statutes.

   Survivors' benefits payable as personal protection insurance benefits under the no-fault insurance act are to be in the amount of the gross wages of the deceased reduced by the amount the deceased would have paid in taxes and by the amount the deceased would have spent on · personal consumption (MCL 500.3108; MSA 24.13108).

4. Insurance — Automobiles — No-Fault — Reimbursement From Tort Recovery — Statutes.

   An insurance carrier paying personal injury protection benefits under a no-fault insurance policy is entitled to reimbursement for economic benefits out of a third-party tort recovery of the person injured as a result of a motor vehicle accident only where the defendant is uninsured, the accident occurs out of state, or the injury is intentionally inflicted (MCL 500.3116; MSA 24.13116).

5. Insurance — Automobiles — No-Fault — Liability — Dramshop Act — Statutes.

   The no-fault act addresses only tort liability arising out of the ownership, maintenance or use of a motor vehicle; therefore, an insurer which has paid personal protection benefits as the result of an automobile accident is not entitled to reimburse-

ment from the proceeds of a recovery by the injured person from a bar owner under the dramshop act because the liability of the bar owner arises from the unlawful selling, giving or furnishing of intoxicating liquor to a visibly intoxicated person (MCL 436.22, 500.3116, 500.3135; MSA 18.993, 24.13116, 24.13135).

PARTIAL CONCURRENCE, PARTIAL DISSENT BY T. M. BURNS, J.

6. INSURANCE — AUTOMOBILES — NO-FAULT — SURVIVORS' BENEFITS — REDUCTION IN BENEFITS — TAXES — STATUTES.

*The amount of survivors' benefits payable under a policy of no-fault automobile insurance should not be reduced by the amount that the deceased would have paid in taxes because the statute governing payment of benefits does not expressly provide for such a deduction and it should not be read into the statute (MCL 500.3108; MSA 24.13108).*

*Sloan, Zarbock, Risdon, Benefiel & Farrer,* for plaintiffs.

*James, Dark & Brill,* for defendant State Farm Mutual Automobile Insurance Company.

Before: D. F. WALSH, P.J., and J. H. GILLIS and T. M. BURNS, JJ.

D. F. WALSH, P.J. Defendant State Farm Mutual Automobile Insurance Company (hereinafter "defendant") appeals the entry of judgment for plaintiffs in the amount of $9,445.49, representing the personal protection insurance benefits payable to plaintiffs as survivors of the deceased Naomi Schwark.

This case arose out of an August 3, 1975, automobile accident in which a car driven by defendant Max E. Lilly collided with a car driven by Naomi Schwark. Mrs. Schwark was killed and four of her children, passengers in the automobile, were injured in the accident. Plaintiff Guy Schwark, husband of Naomi Schwark and father of the injured children, filed suit individually and as

administrator of his wife's estate. He also sued as
next friend of the four minor Schwark children,
three of whom were injured in the accident. The
Schwark's only adult child, Guy Schwark III, was
among those injured in the accident and joined in
the suit. The defendants were Mr. Lilly, Duane K.
Wiltse d/b/a The Lazy Lounge, VFW Mecwarf
Post 5319 (Kenneth Sult, Commander) and State
Farm Mutual Automobile Insurance Company.
Pursuant to settlements, plaintiffs' claims against
all defendants except State Farm were dismissed.
The claims against Mr. Wiltse and the VFW post
were based on alleged dramshop liability. MCL
436.22; MSA 18.933.

Trial was held on December 6, 1977. The parties
agreed that the sole remaining issues concerned: (1)
whether Social Security benefits paid to plaintiffs
as a result of Mrs. Schwark's death could be
deducted from survivors' benefits owed to plaintiffs
by defendant under the no-fault act, MCL
500.3109(1); MSA 24.13109(1);[1] (2) the amount of
survivors' benefits owed to plaintiffs by defendant
under the no-fault act, MCL 500.3108; MSA
24.13108;[2] and (3) whether defendant could be
reimbursed from the amount paid to plaintiffs by
the dramshop defendants, MCL 500.3116; MSA
24.13116.

The trial court found that § 3109 of the no-fault
act was unconstitutional and ruled that defendant
was not entitled to a setoff for Social Security
benefits. The court also found that § 3116 of the
act was unconstitutional and that defendant was

---

[1] "Benefits provided or required to be provided under the laws of
any state or the federal government shall be subtracted from the
personal protection insurance benefits otherwise payable for the
injury." MCL 500.3109(1); MSA 24.13109(1).

[2] There is no question that plaintiffs are dependents of the deceased.
MCL 500.3110; MSA 24.13110.

not entitled to reimbursement from plaintiffs' dramshop recovery.

At trial it was established that Naomi Schwark had been employed outside the home at the time of her death. Her gross weekly earnings were approximately $90. Her weekly take home pay was $69.12. Her husband testified repeatedly that he did not know what portion of those earnings had been used for family purposes and what portion had been used by Mrs. Schwark for her own personal needs. In his final response to questioning along this line, he estimated that half of his wife's income had been used for family purposes.[3]

---

[3] "Q *[by Mr. Dark,* defense counsel] Now, you understand, I assume, that one of the questions involved is what she contributed for the support of the family.

"A *[by Mr. Schwark]* Yes.

"Q So I'm going to be asking you a number of questions to try and determine what that amount might be as compared to what her take-home pay was. I assume some of her take-home pay was used on her purely personal expenses.

"A Yes.

"Q What would those be, Mr. Schwark?

"A She used to have her hair done a couple times a week.

"Q What would that cost?

"A I have no idea.

"Q She just paid for it and didn't tell you or bother you with it.

"A No, she always had her own money.

"Q What else would she use her money for?

"A Oh, gas to get back and forth to work.

"Q Did she pay for her own car repairs and all that?

"A Not all of 'em. It would be hard for me to try to itemize 'em.

"Q She buy her own clothing?

"A Some of 'em.

"Q What other things would she use her money for or her earnings for her own personal use?

"A I can't think of anything else.

"Q Now, what did she do with her paycheck? She give it to you?

"A No.

"Q Did she account to you at all for it?

"A No.

"Q Do you know what part of it she used to buy clothing for the children or things like that?

"A No.

"Q What I'm trying to get at, did you give her your paycheck?

"A I gave her some money, yes.

The trial judge found that survivors' benefits due plaintiffs under § 3108 of the no-fault act were equal to Mrs. Schwark's take-home pay of $69.12 per week. The court interpreted § 3108 as requiring payment of something less than the deceased's gross income. With regard to Mr. Schwark's testimony as to the portion of Mrs. Schwark's income which was used for family purposes, the court found that the evidence was "at best * * * untrustworthy. For example, the amount spent on gasoline and repairs for the decedent's automobile, although used for taking her to and from her place of employment, could have been used for the benefit of the dependents."

We address three issues on appeal:

"Q In other words, you gave her so much money to run the house and so on.

"A Yes.

"Q And how much would you give her a week?

"A I never give her any set amount. Whatever was required.

"Q She'd tell you what expenses she had and you'd give her the money.

"A Yes.

"Q And do you have any idea what portion of her earnings she used for the family as a whole or for the children versus what portion she used for herself?

"A No, I don't know. With five kids, don't take long.

"Q Can you give us an estimate of what portion or percentage of her pay you feel that she used for family rather than for her gas, her own entertainment? Did she smoke?

"A Yes, she did.

"Q Cigarettes and things that would be purely for herself?

"A I'm not saying I used to buy her cigarettes, too.

"Q All right. Can you give me an estimate in your mind what portion of her paycheck went for the family versus her own personal needs?

"A Not honestly. I don't know.

"Q Would you say half of it.

"MR. BENEFIEL [plaintiffs' counsel]: Your Honor, it's already been asked and answered.

"THE COURT: Are you able to answer that question then, Mr. Schwark?

"THE WITNESS: I'll say half."

1. Did the trial court err in ruling that defendant was not entitled to subtract from personal protection insurance benefits the Social Security benefits paid to plaintiffs as a result of Mrs. Schwark's death?

2. Did the trial court properly compute the amount of personal protection insurance benefits payable to plaintiffs as dependent survivors of Mrs. Schwark?

3. Did the trial court err in ruling that defendant was not entitled to reimbursement out of plaintiffs' dramshop recovery from the dismissed defendants?

I. *Social Security Setoff*

The Supreme Court recently held that the setoff provision of § 3109 of the no-fault act is constitutional and enforceable as it relates to Social Security benefits. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979). The trial court's ruling to the contrary is, therefore, reversed.[4]

---

[4] The § 3109 setoff is made only against personal protection benefits paid to dependent survivors pursuant to § 3108—*i.e.,* as repeatedly emphasized by the Supreme Court in *O'Donnell,* § 3109 was designed to require setoff only of *duplicative* government benefits. See *id.* at 544-547 (COLEMAN, J.) and 553, fn 3 (WILLIAMS, J., dissenting).

Plaintiffs raised the novel argument that § 3109 violates § 207 of the Federal Social Security Act:

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 USCA 407.

We note first that much of plaintiffs' argument is erroneously premised on the assumption that Social Security *disability* benefits will be set off against no-fault benefits. In the instant case, plaintiffs have received *survivors'* benefits under the Social Security Act. The complexity of issues and the consequent possibility of protracted administrative proceedings and litigation in Social Security disability cases are necessarily greater than in cases of application for survivors' benefits. We have been presented with no evidence of cases where Social Security survivors' benefits were paid at a later date

II. *Computation of Personal Protection Insurance Benefits for Survivors' Losses*

MCL 500.3108, provides:

"Personal protection insurance benefits are payable for a survivors' loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of his death would have received for support during their dependency from the deceased if he had not suffered the accidental bodily injury causing death and ex-

than no-fault survivors' benefits so that the possibility of attachment of Social Security funds arose.

Nor are we persuaded by plaintiffs' argument that § 3109 operates as a "legal process" to which Social Security benefits are subjected in violation of the Social Security Act. The Social Security recipient is in no way deprived of his Social Security benefits by operation of the no-fault act. Plaintiffs' reliance on *Philpott v Essex County Welfare Board,* 409 US 413; 93 S Ct 590; 34 L Ed 2d 608 (1973), and *Manfredi v Maher,* 435 F Supp 1106 (D Conn, 1977), is, therefore, misplaced. In *Philpott,* the Supreme Court held that the respondent, one of New Jersey's welfare agencies, was barred by § 407 from recovering any amount from the retroactive disability insurance benefits paid to the petitioner under the Social Security Act. As a condition of receiving welfare assistance the petitioner had been required to execute an agreement to reimburse the county welfare board for all assistance payments. Before the Supreme Court, New Jersey argued that the welfare benefits could have been reduced by the amount of Federal Social Security benefits if the latter had been received monthly. Justice Douglas, speaking for a unanimous Court, saw no reason, on that basis, to allow reimbursement from the retroactive benefits paid to the petitioner. Significantly, the Court did not disapprove the automatic setoff of welfare benefits by amounts received from the Federal government under the Social Security Act.

The words "or other legal process" must be interpreted consistently with the named actions at law immediately preceding them in the statute. *In re Vary Estate,* 401 Mich 340, 352; 258 NW2d 11 (1977), *cert den* 434 US 1087; 98 S Ct 1283; 55 L Ed 2d 793 (1978). The exemption provision of § 407 was apparently intended to protect Social Security recipients from the claims of creditors, including the state acting in the capacity of creditor. See *Philpott, supra.* By subtracting from no-fault personal protection insurance benefits to be paid to dependent survivors the amount of duplicative Social Security benefits received by them, a no-fault insurer does not become a creditor of the no-fault beneficiary. Section 3109 does not contemplate a transfer of Social Security benefits or an assignment of one's future right to such benefits. We perceive no violation of the Social Security Act in § 3109(1).

penses, not exceeding $20.00 per day, reasonably incur-red by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if he had not suffered the injury causing death. The benefits payable for survivors' loss in connection with the death of a person in a single 30-day period shall not exceed $1,000.00 and is not payable beyond the first 3 years after the date of the accident."

In *Miller v State Farm Mutual Automobile Ins Co,* 88 Mich App 175; 276 NW2d 873 (1979), a panel of this Court held that the Legislature did not intend that survivors' benefits under § 3108 be reduced by the amount the decedent would have paid in taxes but did intend that such benefits be reduced by the amount used for the decedent's personal consumption.

We concur in the latter conclusion and so rule in this case. With respect to the former conclusion, however, we disagree with the *Miller* panel and rule to the contrary.

Under generally recognized principles of statu-tory construction, when there is no necessity to reconcile conflicting statutes, *Wayne County Civil Service Comm v Board of Supervisors,* 384 Mich 363; 184 NW2d 201 (1971), when there is no ab-sence of adequate operational definitions of rele-vant terms, *Prisoners' Labor Union v Dep't of Corrections,* 61 Mich App 328; 232 NW2d 699 (1975), *lv den* 394 Mich 843 (1975), and when the statutory language is plain and unambiguous, *Jones v Grand Ledge Public Schools,* 349 Mich 1, 9-10; 84 NW2d 327 (1957), judicial construction or attempted interpretation to vary the plain mean-ing of a statute is precluded.

The language employed by the Legislature in

MCL 500.3108, is explicit and unambiguous. It clearly expresses the intent of the Legislature that "benefits are payable for a survivors' loss" and that the "loss" consists of "tangible things of economic value" which the dependents of the deceased *"would have received"* from the deceased for support during their dependency. The dependents of the deceased, however, would not have received any amounts of the decedent's income which the decedent was required to pay in taxes.

The case is remanded to the circuit court for proper determination of the amount of the "tangible things of economic value" which the dependents of Naomi Schwark *would have received* from her for support if she "had not suffered the accidental bodily injury causing death". In making this determination the trial court must reduce Mrs. Schwark's gross wages by an amount fairly representing her personal consumption and also by the amount she would have paid in taxes. It should be noted, however, that this panel agrees with the trial judge that Mr. Schwark's statement that one half of his wife's income was used for family purposes, when read in context, was not sufficiently trustworthy to be relied upon as determinative of the amount of her personal consumption.

III. *Applicability of the No-Fault Act's Reimbursement Provision When Recovery From Third Parties is Based on Dramshop Liability*

In ruling that defendant was not entitled to reimbursement for personal protection insurance benefits from plaintiffs' recovery from the dramshop defendants, the trial court relied on *Murray v Ferris,* 74 Mich App 91; 253 NW2d 365 (1977). The court found § 3116 of the no-fault act unconstitutional and declined to allow reimbursement

from that portion of the dramshop recovery which represented plaintiffs' noneconomic damages.

At the time of the accident which gave rise to this lawsuit, MCL 500.3116(1); MSA 24.13116(1) provided:

"A subtraction from personal protection insurance benefits shall not be made because of the value of a claim in tort based on the same accidental bodily injury. However, after recovery is realized upon a tort claim, a subtraction shall be made to the extent of the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. If personal protection insurance benefits have already been received, the claimant shall repay to the insurers out of the recovery a sum equal to the benefits received, but not more than the recovery exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. The insurer shall have a lien on the recovery to this extent. A recovery by an injured person or his estate for loss suffered by him shall not be subtracted in calculating benefits due a dependent after the death and a recovery by a dependent for loss suffered by the dependent after the death shall not be subtracted in calculating benefits due the injured person."

The Supreme Court recently declined to follow the approach taken in *Murray v Ferris, supra.* Applying established rules of statutory construction in *Workman v Detroit Automobile Inter-Insurance Exchange,* 404 Mich 477; 274 NW2d 373 (1979), the Court interpreted § 3116 so as not to allow unconditional reimbursement of no-fault insurance carriers out of tort recoveries from third parties. The Court found that it was necessary to construe § 3116 in light of § 3135[5] of the no-fault

---

[5] "(1) A person remains subject to tort liability for noneconomic loss caused by his ownership, maintenance or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function or permanent serious disfigurement.

act. To do otherwise would allow the absurd result
of depriving an injured person of the limited tort
remedy provided in § 3135. The Court held that,
under § 3116,

"an insurance carrier paying personal injury protec-
tion benefits is entitled to reimbursement from the tort
recovery of a person injured as a result of a motor
vehicle accident only if, and to the extent that, the tort
recovery includes damages for losses for which personal
injury protection benefits were paid." *Id.* at 510 (opinion
of WILLIAMS, J.).

This interpretation of § 3116 gives full effect to
§ 3135, and effectuates the essential purpose of
§ 3116—*i.e.,* to prevent double recovery of eco-
nomic loss by persons whose right to sue in tort
for economic loss is not abolished by § 3135. The
Court noted that such double recovery might occur
with respect to: (1) persons injured by uninsured
motorists, § 3135(2); (2) persons injured in automo-
bile accidents in another state, § 3135(2); and (3)
persons suffering intentionally caused harm in

"(2) Notwithstanding any other provision of law, tort liability
arising from the ownership, maintenance or use within this state of a
motor vehicle with respect to which the security required by subsec-
tions (3) and (4) of section 3101 was in effect is abolished except as to:

"(a) Intentionally caused harm to persons or property. Even though
a person knows that harm to persons or property is substantially
certain to be caused by his act or omission, he does not cause or suffer
such harm intentionally if he acts or refrains from acting for the
purpose of averting injury to any person, including himself, or for the
purpose of averting damage to tangible property.

"(b) Damages for noneconomic loss as provided and limited in
subsection (1).

"(c) Damages for allowable expenses, work loss and survivor's loss
as defined in sections 3107 to 3110 in excess of the daily, monthly and
3 year limitations contained in those sections. The party liable for
damages is entitled to an exemption reducing his liability by the
amount of taxes that would have been payable on account of income
the injured person would have received if he had not been injured."
MCL 500.3135; MSA 24.13135.

auto accidents, § 3135(2)(a). *Id.* at 510, fn 15 (opinion of WILLIAMS, J.).

Concurring in the result on this issue, Justices LEVIN and KAVANAGH found that the Legislature's recent amendment of § 3116 provided the definitive answer in the controversy over the proper construction and validity of the section. As amended, the section provides for reimbursement for economic benefits out of third-party tort recoveries only where the defendant is uninsured, the accident occurs out of the state, or the injury is intentionally inflicted.[6]

---

[6] Section 3116 as amended provides:

"(1) A subtraction from personal protection insurance benefits shall not be made because of the value of a claim in tort based on the same accidental bodily injury.

"(2) *A subtraction from or reimbursement for personal protection insurance benefits paid or payable under this chapter shall be made only if recovery is realized upon a tort claim arising from an accident occurring outside this state, a tort claim brought within this state against the owner or operator of a motor vehicle with respect to which the security required by section 3101(3) and (4) was not in effect, or a tort claim brought within this state based on intentionally caused harm to persons or property, and shall be made only to the extent that the recovery realized by the claimant is for damages for which the claimant has received or would otherwise be entitled to receive personal protection insurance benefits. A subtraction shall be made only to the extent of the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. If personal protection insurance benefits have already been received, the claimant shall repay to the insurers out of the recovery a sum equal to the benefits received, but not more than the recovery exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. The insurer shall have a lien on the recovery to this extent. A recovery by an injured person or his or her estate for loss suffered by the person shall not be subtracted in calculating benefits due a dependent after the death and a recovery by a dependent for loss suffered by the dependent after the death shall not be subtracted in calculating benefits due the injured person.*

"(3) A personal protection insurer with a right of reimbursement under subsection (1), if suffering loss from inability to collect reimbursement out of a payment received by a claimant upon a tort claim is entitled to indemnity from a person who, with notice of the insurer's interest, made the payment to the claimant without making the claimant and the insurer joint payees as their interests may appear or without obtaining the insurer's consent to a different method of payment.

On appeal in the instant case, defendant con-
cedes that it is not entitled to reimbursement from
that part of the dramshop recovery which repre-
sents plaintiffs' noneconomic losses. It argues only
that that portion of the dramshop recovery repre-
senting economic losses for which defendant is
liable to plaintiffs under the no-fault act should be
subject to its right of reimbursement.

If we were to adopt the analysis of Justices
Levin and Kavanagh, we would reject defendant's
argument summarily, since, as recently amended,
§ 3116 clearly has no applicability to the instant
fact situation. We are also persuaded, however,
that the analysis of the *Workman* majority com-
pels us to reject defendant's argument. Section
3116 must be construed in light of and together
with § 3135. In the latter section the Legislature
discusses only "tort liability arising out of the
ownership, maintenance or use * * * of a motor
vehicle". § 3135(2). The liability of the dramshop
defendants did not arise out of the ownership,
maintenance or use of an automobile. Instead
their liability arose from their alleged "unlawful
selling, giving or furnishing * * * intoxicating
liquor" to "a visibly intoxicated person". MCL
436.22.

In enacting the no-fault act the Legislature ad-
dressed only one type of tort liability. The act
comprehensively covers only tort liability arising
out of the ownership, maintenance or use of motor
vehicles. To extend its provisions to liability aris-
ing outside its intended scope would circumvent

---

"(4) *A subtraction or reimbursement shall not be due the claimant's
insurer from that portion of any recovery to the extent that recovery
is realized for noneconomic loss as provided in section 3135(1) and
(2)(b) or for allowable expenses, work loss, and survivor's loss as
defined in sections 3107 to 3110 in excess of the amount recovered by
the claimant from his or her insurer.*" (Emphasis indicates amenda-
tory language of 1978 PA 461.)

the legislative process.[7] We rule, therefore, that the defendant is not entitled to reimbursement for personal protection insurance benefits from plaintiffs' recovery from the dramshop defendants.

Affirmed in part; reversed in part; remanded for determination of the amount of no-fault benefits still owed to plaintiffs by defendant. No costs, each party having partially prevailed.

J. H. GILLIS, J., concurred.

T. M. BURNS, J., *(concurring in part, dissenting in part).* I concur in Judge WALSH's opinion in all respects save one. I would hold that the conclusion expressed in *Miller v State Farm Mutual Automobile Ins Co,* 88 Mich App 175; 276 NW2d 873 (1979), concerning deduction for amounts the deceased would have paid in taxes is correct. MCL 500.3108; MSA 24.13108, does not expressly provide for such deduction, as does MCL 500.3107; MSA 24.13107, and I would not read this requirement into the act.

---

[7] Another example of a theory of liability which may be the basis of a claim for damages following a motor vehicle accident is products liability. As is the case with dramshop liability, liability under this theory would not arise out of the ownership, maintenance or use of a motor vehicle.