STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v
SOO LINE RAILROAD COMPANY

Docket No. 48912. Submitted May 13, 1980, at Marquette.—Decided
May 5, 1981. Leave to appeal applied for.

State Farm Mutual Automobile Insurance Company brought an
action against the Soo Line Railroad Company and the Board
of County Road Commissioners of Chippewa County for reim-
bursement of personal protection benefits which it paid to
Cheryl A. Holmes under a no-fault insurance policy for injuries
which she received in a collision with a train owned by defen-
dant railroad and for which she received certain monies from
defendants in settlement of an action brought in federal court
based on the same injuries. Defendants moved for accelerated
and/or summary judgment on the ground that the action was
barred under the reimbursement provisions of the no-fault act.
Marquette Circuit Court, Edward A. Quinnell, J., granted the
motions for accelerated judgment. Plaintiff appeals. *Held:*

1. The trial court erred in ruling that the amended reim-
bursement provisions of the no-fault act were to be applied
retroactively.

2. The reimbursement provisions of the no-fault act in effect
prior to the current amendment, while applicable to a third-
party recovery where the third party liability arose outside the
scope of the no-fault act, are inoperable under the facts of this
case. Plaintiff has no right of reimbursement because the
settlement agreement which defendants entered into with
plaintiff's insured in federal court specifically stated that the
monies paid were compensation solely for noneconomic losses.

3. The decision of the trial court is affirmed on the basis of
this analysis.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 7 Am Jur 2d (Rev), Automobile Insurance §§ 25, 348, 349.

7A Am Jur 2d, Automobile Insurance § 443.

Right of insurer to reimbursement out of recovery against tortfea-
sor. 69 ALR3d 830.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

[2] 73 Am Jur 2d, Statutes § 347.

1. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — REIMBURSE-
   MENT FROM TORT RECOVERY — STATUTES.

   An insurance carrier which has paid personal injury protection
   benefits under a no-fault insurance policy is entitled to reim-
   bursement out of a third-party tort recovery by the person
   injured as a result of a motor vehicle accident only to the
   extent that the tort recovery includes damages for losses for
   which personal injury protection benefits were paid and only
   where either the defendant was uninsured, the accident oc-
   curred outside the state, or the injury was intentionally in-
   flicted (MCL 500.3116[2]; MSA 24.13116[2]).

2. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — RETROAC-
   TIVE APPLICATION — STATUTES.

   An amendment to the section of the no-fault act which provides
   for reimbursement of personal protection insurance benefits
   paid to an injured party who subsequently recovers in tort
   should not be applied retroactively (MCL 500.3116; MSA
   24.13116).

3. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — TORT LIA-
   BILITY — STATUTES.

   Tort liability arising out of the ownership, maintenance, or use
   within the state of a motor vehicle for which required security
   was in effect is limited to damages for intentional harm to
   persons or property, noneconomic loss for death, serious impair-
   ment of body function, or permanent serious disfigurement,
   statutorily defined allowable expenses, work loss, and survivor's
   loss, and up to $400 of damage to motor vehicles to the extent
   that such damages are not covered by insurance; liability which
   does not arise out of the ownership, maintenance, or use of a
   motor vehicle is without the scope of the no-fault act and is not
   so limited (MCL 500.3135; MSA 24.13135).

4. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — REIMBURSE-
   MENT FROM TORT RECOVERY — STATUTES.

   An insurance carrier which has paid allowable medical and
   rehabilitation expenses and work loss benefits under a no-fault
   insurance policy is entitled to reimbursement out of a third-
   party tort recovery of the person injured by a tortfeasor whose
   liability did not arise out of the ownership, maintenance, or use
   of a motor vehicle or from the tortfeasor where he had notice of
   both the carrier's payments and the injured party's duty to
   reimburse the carrier therefor prior to entering into a settle-
   ment agreement except where the settlement agreement specif-
   ically states that payment to the injured party was solely for

compensation for noneconomic losses (MCL 500.3116; MSA 24.13116).

*Bridges & Collins* (by *Brian D. Sheridan*), for plaintiff.

*Humphrey & Murphy,* for defendants.

Before: MacKenzie, P.J., and Bronson and Allen, JJ.

MacKenzie, P.J. On April 10, 1975, Cheryl A. Holmes, an insured of plaintiff, State Farm Mutual Automobile Insurance Company, was severely and permanently injured when an automobile which she was driving struck a train of the Soo Line Railroad Company in Chippewa County, Michigan.

Pursuant to the applicable policy of insurance and the no-fault act itself, State Farm began paying Mrs. Holmes "allowable expenses", MCL 500.3107(a); MSA 24.13107(a), consisting of medical and rehabilitation expenses, and "work loss" benefits, MCL 500.3107(b); MSA 24.13107(b). As of the date the complaint was filed in the instant case, State Farm had paid $5,032.61 for allowable expenses and $9,687.51 for work loss benefits, for a total of $14,720.12. Mrs. Holmes claimed that State Farm owed her $23,695 for additional allowable expenses for medical treatment.

On November 14, 1975, an action was commenced in the United States District Court for the Western District of Michigan, captioned *"Gerald A. Holmes and Cheryl Holmes v Soo Line Railroad Company and Chippewa County Road Commission, jointly and severally".* The complaint alleged that the railroad crossing at which the accident occurred was under the jurisdiction of defendant road commission and that the negligence of defen-

dant railroad company and defendant road commission, in various respects, was the proximate cause of Mrs. Holmes's injuries. The complaint sought damages for expenses of "travel, physicians and surgeons, hospitalization, drugs, sedatives, artificial devices * * * nursing care, loss of wages * * * and other and further special damages".

The federal court action was settled in November of 1978 for $195,000. A stipulation for dismissal was signed by all parties on November 17, 1978, reflecting compensation to Gerald A. Holmes in the amount of $20,000 for loss of consortium and to Cheryl A. Holmes for pain and suffering and impairment to wage earning capacity in the amount of $175,000. The stipulation further recited that the moneys reflected in the judgment did not reimburse the Holmes's for hospital or medical expenses or for any of the benefits received from State Farm. An order dismissing was signed and entered by the Honorable Noel P. Fox on November 28, 1978.

No payments of any kind were made to State Farm by the defendants, nor was State Farm made a joint payee on the defendants' drafts.

This action was commenced on May 24, 1979, by the plaintiff, State Farm, for reimbursement of personal protection benefits under MCL 500.3116; MSA 24.13116. Both defendants filed motions for accelerated and/or summary judgment, based on § 3116 of the no-fault act. Following a hearing, the trial court granted both motions for accelerated judgment, holding that § 3116, as amended by 1978 PA 461 (immediately effective October 16, 1978), applied to this action, and that this action was, therefore, barred because the original tort claim from which reimbursement was sought did not arise from an accident occurring outside Michigan,

an accident involving an uninsured vehicle, or an accident involving intentional harm.

The trial judge further held that even if the original version of § 3116 applied, no allocation of the tort claim settlement between personal protection insurance type benefits *(e.g.,* pain and suffering) was possible, and, therefore, reimbursement to the personal protection insurer for personal protection insurance benefits was impractical or impossible.

A stipulation and order allowing an amendment to the complaint to allege the uncollectibility of the Holmes's was entered on November 28, 1979. An order for accelerated judgment on behalf of both defendants was entered on November 29, 1979. Appeal was taken as of right from that accelerated judgment.

MCL 500.3116; MSA 24.13116, as originally enacted by 1972 PA 294, provided, in pertinent part:

"(1) * * * after recovery is realized upon a tort claim * * * [i]f personal protection insurance benefits have already been received, the claimant shall repay to the insurers out of the recovery a sum equal to the benefits received * * *.

"(2) A personal protection insurer with a right of reimbursement under subsection (1), if suffering loss from inability to collect reimbursement out of a payment received by a claimant upon a tort claim is entitled to indemnity from a person who, with notice of the insurer's interest, made such a payment to the claimant without making the claimant and the insurer joint payees as their interests may appear or without obtaining the insurer's consent to a different method of payment".

This section was substantially amended by House Bill 5925, enacted as 1978 PA 461, immedi-

ately effective on October 16, 1978. The relevant amended portion states as follows:

"(2) A subtraction from or reimbursement for personal protection insurance benefits paid or payable under this chapter shall be made only if recovery is realized upon a tort claim arising from an accident occurring outside this state, a tort claim brought within this state against the owner or operator of a motor vehicle with respect to which the security required by section 3103(3) and (4) and was not in effect, or a tort claim * * * to persons or property * * *".

Clearly, the language of the 1978 amendment allows no recovery in an action such as this, because Mrs. Holmes's tort claim did not arise from an out-of-state accident, an uninsured driver, or an intentional act.

Defendants argue that the amended version of § 3116 should be applied retroactively. We agree with other panels of this Court that the Supreme Court, in *Workman v Detroit Automobile Inter-Ins Exchange,* 404 Mich 477; 274 NW2d 373 (1979), implicitly ruled that § 3116 of the no-fault act is not to be applied retroactively. *Schwark v Lilly,* 91 Mich App 189; 283 NW2d 684 (1979), *Auto-Owners Ins Co v Employers Ins of Wausau,* 103 Mich App 682; 303 NW2d 867 (1981).

Accordingly, we find that the trial court erred when it ruled that the amended version of § 3116 was to be applied retroactively.

We must next determine whether § 3116 of the no-fault act, as originally enacted, allows reimbursement of personal protection insurance benefits where the tort action out of which reimbursement is sought arose out of the insured's claim against a railway company and a road commission

when the automobile which she was driving struck a train.

The plaintiff argues that the insured's tort claims against the railroad and the road commission did not arise from those entities' ownership, maintenance, or use of a motor vehicle; therefore, the insured's third-party claim was not limited by the language of § 3135 of the no-fault act. Thus, the insured, who sued for both economic and noneconomic damages, could have a valid basis for the recovery of both. MCL 500.3135; MSA 24.13135 provides:

"(1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

"(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(3) and (4) was in effect is abolished except as to:

"(a) Intentionally caused harm to persons or property. Even though a person knows that harm to persons or property is substantially certain to be caused by his or her act or omission, the person does not cause or suffer such harm intentionally if he or she acts or refrains from acting for the purpose of averting injury to any person, including himself or herself, or for the purpose of averting damage to tangible property.

"(b) Damages for noneconomic loss as provided and limited in subsection (1).

"(c) Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly, and 3-year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his or her liability by the amount of taxes that would have been payable on account of income the injured person would have received if he or she had not been injured.

"(d) Damages up to $400.00 to motor vehicles, to the extent that the damages are not covered by insurance. An action for damages pursuant to this subdivision shall be conducted in compliance with subsection (3).

We agree with plaintiff that the foregoing section of the no-fault act does not limit the liability of the railroad company and the road commission since their liability is not caused by their ownership, maintenance, or use of a motor vehicle. As our Court determined in *Schwark, supra,* that the liability of the dramshop defendants did not arise out of the ownership, maintenance, or use of an automobile, but arose under the provisions of the dramshop act, we find the present facts address a type of tort liability outside the intended scope of the no-fault act. Defendants' common-law and statutory liability for economic and noneconomic damages was not affected by the no-fault act.

Since the liability of the defendants is outside the intended scope of the no-fault act, the claim of plaintiff's insured was not limited to the requirements of § 3135, and the settlement could have included both economic and noneconomic damages.

While the ability of the insured to proceed in tort against the railroad and road commission is not limited by the provisions of § 3135, the plaintiff's insured had received personal protection benefits at the time she settled her claim against defendants herein for her "claim in tort based on the same accidental bodily injury". MCL 500.3116; MSA 24.13116. The federal court complaint requested damages for economic loss. The settlement releases very specifically disavowed any payment, however, for economic losses. Also executed as a part of the settlement agreement was a "hold harmless" agreement by which defendants indem-

nified plaintiff's insured for any liability to her insurer, plaintiff, State Farm.

The question, then, is does the admonition in *Workman* followed by *Schwark* and *Auto-Owners* that § 3116 be construed in light of § 3135 have the result that the reimbursement provision of § 3116 has no applicability to a third-party recovery where the third-party liability arises outside the scope of the no-fault act? We think not. Although *Workman* held that § 3116 should be construed in light of § 3135, it has never been held that § 3116 is only applicable to § 3135 recoveries. The rule announced was that "an insurance carrier paying personal injury protection benefits is entitled to reimbursement from the tort recovery of a person injured as a result of a motor vehicle accident only if, and to the extent that, the tort recovery includes damages for losses for which personal protection benefits were paid". *Workman, supra,* 510. The stated purpose of this rule is "to prevent *double recovery*". *Id.*

To hold that § 3116 has no applicability to a third-party recovery where the third-party liability arises outside the scope of the no-fault act would allow the possibility of double recovery to the motorist receiving injury through actions of a third-party tortfeasor whose liability does not arise out of the ownership, maintenance, or use of a motor vehicle.

The amendment of § 3116 limits the applicability of the reimbursement provision. However, under *Workman,* plaintiff's insured could have made a recovery of settlement which would have reimbursed the no-fault carrier as contemplated for benefits paid out for economic losses and made the insured whole as well, because there is no conflict between §§ 3116 and 3135 as applied to the facts of this case. This reimbursement of the no-fault insurer and compensation of insured for the remain-

ing damages would have been in keeping with the intention of the no-fault act to limit double recovery by the claimant and the resulting duplication of payments for the same loss by insurers.

Plaintiff's insured here did not proceed to judgment, however; the case was settled with all the parties in the federal district court suit stipulating that all of the award compensated noneconomic damages. The settlement of lawsuits is desirable and to be encouraged, and we are reluctant to look behind the expressed intent of the parties.

However, when the injured party stipulates to a settlement which does not reimburse the no-fault insurance company in a case where the cause of action is not limited by the provisions of § 3135, the reimbursement provisions of § 3116 may be avoided, frustrating the overall objective of the no-fault act to reduce payment of claims. Subsection (2) of § 3116 clearly intended that the third-party tortfeasor payor (here, defendant railroad and defendant road commission) who pays the injured claimant with notice that the claimant has received personal protection benefits from the payor has the duty to reimburse the no-fault carrier. The record indicates that the defendants did have notice of State Farm's claim here.

Nevertheless, we conclude that the preferable result under these facts is to give literal effect to the terms of the settlement agreement, accepting the recitation of the parties to the federal court suit, that the payment by the defendants to plaintiff's insured was made solely for noneconomic losses. Plaintiff, then, has no "right of reimbursement under subsection (1)" of § 3116 and the indemnification provisions of subsection (2) are inoperable. Our analysis differs from that of the trial judge, and the case is affirmed on other grounds.

Affirmed.