Margaret A. NEWMASTER, John E.
Odegard, Respondents,

v.

Albert MAHMOOD, et al., Appellants.

No. CO–84–1335.

Court of Appeals of Minnesota.

Jan. 22, 1985.

Edward F. Fox, St. Paul, for Margaret A. Newmaster.

John E. Odegard, pro se.

Jeffrey M. Bauer, Minneapolis, for appellants.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

SEDGWICK, Judge.

Lakeside Club, a defendant in a dramshop action, appeals the denial of a motion for new trial or a judgment NOV. The jury found that the club illegally sold liquor to a driver who negligently collided with the plaintiff. We affirm.

## FACTS

After drinking at the Lakeside Club, John Odegard ran a stop sign and collided with Margaret A. Newmaster's car. Newmaster's neck was broken in the collision. Odegard's blood alcohol level at the time of the accident was .25.

Newmaster brought a dramshop action against Odegard, an uninsured motorist, and Lakeside Club, a restaurant and bar owned and operated by appellant Albert Mahmood and his brother.

On the day of the accident Odegard had dinner at the Lakeside Club. Odegard testified that he had several drinks before going to the club, and was served 3 to 5 drinks at the club. A police officer testified that Odegard admitted that he had been drinking at the Lakeside Club.

Mahmood, his wife, and two long-time waitresses employed at the club all testified that Odegard was not served drinks that day. Albert Mahmood testified that he saw Odegard stagger and weave into

the club, concluded Odegard was drunk and informed him that he could have dinner but not drinks. He informed his employees not to serve Odegard·liquor.

Newmaster, a 35-year-old full-time teacher, librarian and mother of two, spent two weeks in the hospital following the accident. Her doctor placed no restrictions. upon her when she returned to work.

Ten months after the accident she was diagnosed as 10% partially and permanently disabled due to her injuries. She is currently under treatment with an orthopedic surgeon for back pain, headaches and stiffness.

Approximately three years after the accident, Newmaster's doctor, Dr. Lambert, took new x-rays of her neck and noticed that her condition had deteriorated as a result of degenerative arthritis, leaving her 15% disabled.

Dr. Lambert testified that Newmaster's condition will deteriorate progressively and could prevent her from working full time in the future. Defendant's doctor agreed that no exercise program, therapy or drug treatment will cure her condition.

Three months before trial, Newmaster's lawyer wrote the following to appellants:

Given the progressive nature of Ms. Newmaster's injuries and the deterioration in her condition, I am also considering offering the expert testimony of an economist or some other similar vocational specialist on the issue of Ms. Newmaster's future damages, particularly as it might relate to future disability and lost income.

Two months before trial, Newmaster's lawyer wrote appellants that Newmaster had retained Dr. Neal, a licensed consulting psychologist and vocational expert, to "evaluate the economic impact of Mrs. Newmaster's injuries" at trial. The doctor's resume was enclosed and the letter said Dr. Neal's opinions would be available within 10 days. Neither letter mentioned that Newmaster had taken a Minnesota Multiphasic Personality Inventory (MMPI)

or that Dr. Neal's opinions would be based, in part, on the results of that inventory.

Newmaster's lawyer did not furnish appellants further information regarding Dr. Neal's testimony until the Thursday afternoon before the scheduled Monday trial date. That letter said,

Dr. Neal indicates that Mrs. Newmaster's MMPI indicated a psychophysiological reaction to her neck which, in the future, will create additional problems in terms of apprehension, self-confidence, job attitude and performance, and to the depression which were considered as elements of Dr. Neal's determination of lost income.

Appellants did not move for a continuance or indicate that they wanted to present another expert to rebut Dr. Neal's testimony.

Dr. Neal, testified that within the next ten years a conservative projection of the impairment in Newmaster's total lifetime earning capacity would fall between a minimum of $129,500 for an unchanged disability of 15% and a maximum of $650,000 assuming total disability by 1994.

Dr. Neal based his opinions of Newmaster's earning capacity, on the medical reports of both Newmaster's doctor and the adverse examiner, a personal interview with Newmaster, a review of her work history and income, and the results of the MMPI.

After the jury returned its $207,097 verdict in favor of Newmaster, the appellants filed post trial motions for JNOV, new trial, and remittitur together with an application to offset no-fault and uninsured motorist benefits which Newmaster received through her own no-fault carrier.

All motions were denied.

### ISSUES

1. Did the trial court properly deny defendant's post trial motions?

2. Did the trial court abuse its discretion in admitting the testimony of plaintiff's expert witness?

3. Did the trial court correctly rule that the verdict should not be reduced by the amount of the basic economic loss benefits and uninsured motorist benefits paid?

## ANALYSIS

### 1.a. *Denial of JNOV*

■ The standard to be applied in determining the propriety of granting a motion for judgment notwithstanding the verdict is whether there is ANY competent evidence reasonably tending to support the verdict. *Kantorowicz v. VFW Post, No. 230*, 349 N.W.2d 597 (Minn.Ct.App.1984).

■ The trial court must base its decision on the evidence as a whole, viewing all evidence in a light most favorable to the verdict. *Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 232 N.W.2d 236 (1975). Only where the facts are undisputed and reasonable minds can draw but one conclusion from them does the question for determination become one of law for the court. *Kramer v. Kramer*, 282 Minn. 58, 162 N.W.2d 708 (1968).

■ Despite the sharp conflict in two fact issues, viewing the evidence in a light most favorable to the verdict, there is ample evidentiary support for the verdict. Therefore, the trial court properly denied the motion JNOV.

### 1.b. *Denial of New Trial*

■ A motion for a new trial made upon the ground that the jury verdict is not supported by the evidence should be granted only in cases where the preponderance of the evidence clearly suggests jury mistake, improper motive, bias, or caprice. *Conover v. Northern State Power Co.*, 313 N.W.2d 397, 408 (Minn.1981).

■ Viewing the evidence in a light most favorable to the verdict, there is ample credible evidence to support the verdict against both defendants. Additionally, there is no articulable reason or event showing an injustice has been done. Therefore, there is no reason to submit this case to a second jury.

### 1.c. *Denial of Remittitur*

■ A motion for remittitur is also addressed to the sound discretion of the trial court whose ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. The trial court must leave the plaintiff with the highest dollar verdict permissible under the evidence. *Cf. Sandt v. Hylen*, 301 Minn. 475, 224 N.W.2d 342 (1974). The trial court did not abuse its discretion in denying the motion for remittitur.

2. Appellants argue that the trial court abused its discretion in admitting the testimony of Dr. Neal in light of the untimely disclosure of the substance of his testimony.

■ The decision to permit the use of expert testimony, even on short notice, is within the discretion of the trial court. *Cornfeldt v. Tongen*, 262 N.W.2d 684, 697 (Minn.1977).

When the failure to disclose is not willful, the trial court should consider alternative methods short of exclusion for preventing prejudice, e.g., granting a continuance and assessing costs against the offending party, *Krech v. Erdman*, 305 Minn. 215, 218, 233 N.W.2d 555, 557 (1975); or limiting the subject matter of the testimony to matters already disclosed, *Phelps v. Blomberg Roseville Clinic*, 253 N.W.2d 390 (Minn.1977).

The *Cornfeldt* court stressed that the judicial process is an attempt to seek the truth. It said:

> We should not unduly hamper that search by excluding relevant evidence where other means are available to protect a party from the effects of an inadvertent failure to disclose. Trial courts must have discretion to determine the sanction appropriate to a violation of the discovery rules, for they are in the best position to assess the degree of prejudice that will arise from the violation and the efficacy of the remedies available that may prevent prejudice from resulting.

*Id.* at 697.

The appellants knew more than two months before trial that plaintiffs were

considering calling a vocational expert to testify regarding plaintiff's future earning capacity in light of her deteriorating physical condition. More than one month before trial, appellants were certain plaintiff would present such expert. Lastly, 12 days before Dr. Neal took the stand appellants knew the substance of his testimony.

■■■ Although it undoubtedly would have been better practice to submit the summation of Dr. Neal's proposed testimony to the appellants earlier, there is nothing in the record which indicates that failure to disclose was intended to take advantage or cause prejudice to the opposing party by surprise testimony.

In *Ford v. Chicago, Milwaukee, St. Paul and Pacific R.R. Co.*, 294 N.W.2d 844 (Minn.1980), the plaintiffs knew of new findings by their expert witness prior to trial but did not inform the defendants. Defendants were adequately on notice that plaintiff's expert would testify regarding a coccyx injury.

The expert later discovered that the coccyx was fractured. The doctor did not disclose this when deposed just prior to trial.

Minn.R.Civ.P. 26.05(1) requires a party to supplement responses to questions regarding the substance of an expert witness' testimony. Minn.R.Civ.P. 26.05(2) requires supplementation to any interrogatory where prior answers are no longer true.

The *Ford* court found the plaintiffs in clear violation of the rules but did not exclude the doctor's testimony because

> the court felt the defendants were adequately on notice of the coccyx injury to allow their expert to prepare for trial. Also, at no time did either defendant request a continuance or in any way seek to offer any additional evidence.

*Id.* at 847.

Appellants had all the materials Newmaster relied upon in determining her future earning capacity, with the exception of the MMPI results, well in advance of trial. Dr. Neal put no more emphasis on the MMPI results in making his projections of Newmaster's future earnings than he did in considering the medical reports, tax returns, work history, Newmaster's personal interview and all other information used in making his projections and disclosed to appellants.

Appellant's exhaustive cross examination of Dr. Neal tends to support the trial court's conclusion that appellants were not prevented from countering Dr. Neal's testimony in a meaningful way.

Additionally, appellants' failure to request a continuance supports the trial court's determination that respondent's failure to make timely disclosure did not prevent appellants from adequately preparing for trial.

The supreme court has upheld trial courts' refusals to suppress experts' testimony in several cases where the identity of a medical expert is not disclosed until the day before trial, e.g. *Krech*, 305 Minn. 215, 233 N.W.2d 555; or disclosure is not made until during the trial, *Ford*, 294 N.W.2d 844; *Phelps*, 253 N.W.2d 390.

Therefore, the trial court did not abuse its discretion in allowing Dr. Neal's testimony into evidence despite the less than preferable notice.

■■■ 3. Lastly, appellant claims the trial court erred in not reducing the verdict by the amount of the basic economic loss benefits and uninsured motorist benefits Newmaster received.

This narrow issue has not been addressed in the context of a dramshop action in this state.

Before trial Newmaster brought an action against her uninsured motorist carrier which was resolved by a settlement agreement whereby Newmaster was paid $17,500 in uninsured motorist benefits and her insurance carrier reserved subrogation rights obligating Newmaster to repay her carrier $17,500 if she recovers a verdict at least that large.

Appellants urge the application of Minn. Stat. § 65B.51, subd. 1 (1982), which is designed to prevent double recovery when

the claimant's injuries arise out of an automobile accident.

Here, however, there will be no double recovery of the $17,500 because Newmaster is obligated by her settlement agreement with her insurer to refund this amount.

Appellants also claim the verdict should have been reduced by $4,571, the amount of basic economic benefits Newmaster received from her insurance carrier. The trial judge concluded the verdict should not be reduced by the $4,571 because a dramshop action is a strict liability action, not a negligence action.

Minn.Stat. § 65B.51, subd. 1, is inapplicable regarding the reimbursement of the basic economic benefits when the action is on a strict liability theory. See, Steenson, *A Primer on Minnesota No-Fault Insurance,* 7 Wm. Mitchell L.Rev. 313, 382 (1981).

This is consistent with a Michigan Court of Appeals' holding that an analogous no-fault reimbursement provision was inapplicable in a dramshop case because

> The liability of the dramshop defendants did not arise out of the ownership, maintenance or use of an automobile. Instead, their liability arose from their alleged unlawful selling, giving or furnishing of intoxicating liquor to a visibly intoxicated person.

*Schwark v. Lilly,* 91 Mich.App. 189, 202, 283 N.W.2d 684, 690–91 (1979); *Tebo v. Havlik,* 109 Mich.App. 413, 311 N.W.2d 372 (Mich.1981).

### DECISION

We affirm the trial court in all respects.