**Michael ERICKSON, Appellant,**

v.

**HINCKLEY MUNICIPAL LIQUOR STORE, et al., Defendants,**

**Drift Inn Resort, Marina Bar, Andy Mitchell, Respondents.**

Nos. C1–85–527, C5–84–1914.

Court of Appeals of Minnesota.

Aug. 13, 1985.

James H. Ranum, Jane Van Valkenburg, Minneapolis, for appellant.

Michael K. O'Tool, St. Cloud, for Drift Inn Resort.

Eric J. Magnuson, Lewis A. Remele, Jr., Minneapolis, for Marina Bar.

Andy Mitchell, pro se.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Michael Erickson appeals the trial court's award of damages to his no-fault carrier, a non-party to this action. He also appeals the trial court's refusal to instruct the jury on punitive damages, its failure to hold the respondents (Marina Bar and Mitchell, the intoxicated driver) jointly and severally liable and its award of attorney's fees against him incurred as a result of a prior mistrial of the action.

## FACTS

On the day of the accident, respondent Andy Mitchell began drinking around 3 p.m. He and a friend purchased several twelve packs of beer, portions of which they drank together. That evening at the Drift Inn Resort, he bought one or two more twelve packs which he also drank with his friend. Before the bars closed, the two stopped at Marina Bar where Mitchell had five or six cocktails.

After leaving the bar, the pair continued drinking for several hours in a nearby parking lot. Mitchell was, by that time, intoxicated and began drag racing on a nearby highway. At some point his friend got out of the car because Mitchell was "driving crazy."

At 2:15 a.m. Mitchell, while racing on the highway, hit appellant Michael Erickson's car head on, causing Erickson severe injuries. Mitchell was uninsured.

Erickson brought a negligence action against Mitchell, and a dramshop action against both Drift Inn Resort and Marina Bar. Erickson's treating physician was deposed prior to trial. The parties agreed that appellant would use the deposition at trial and, in turn, respondent would not request an independent medical exam.

At trial appellant decided to call the treating physician to give live testimony. The trial court allowed him to testify with the provision that the doctor could not expand on testimony he gave at the deposition. Appellant's attorney failed to so inform the physician and at trial the physi-

cian testified to matters outside the scope of the deposition. As a result, the judge declared a mistrial and awarded respondent costs and attorneys fees, payable at completion of the trial.

Prior to the second trial, the parties stipulated that Erickson was not at fault. The court refused to instruct the jury on punitive damages. Following deliberations, the jury returned a $254,000 verdict for Erickson. It found Marina Bar 20% at fault, Mitchell 80% at fault, and Drift Inn Resort 0% at fault.

Before the trial Allstate, Erickson's no-fault insurer, paid Erickson $200,000 in uninsured motorist benefits, $10,793.75 past wage loss benefits, and $23,410.18 medical benefits. Appellant and Allstate executed a receipt and release ("subrogation agreement"), set out in full in this opinion. In its order the trial court attempted to carry out the subrogation agreement, reducing Erickson's award by the amount of the benefits he received from Allstate and by the attorneys fees ordered after the mistrial. The court awarded Allstate, a non-party to the suit, $46,840.79, 20% of the benefits Allstate had paid Erickson, the percentage of fault apportioned to Marina Bar.

Erickson appealed. He also filed, and this court granted, a motion to consolidate his appeal from the trial court judgment with his appeal from the unentered judgment of August 10, 1984, or, in the alternative, to treat the September 27, 1984, order for judgment as the final judgment.

## ISSUES

1. Did the trial court err by awarding a non-party insurance company, with whom appellant had a signed subrogation agreement, uninsured motorist benefits, medical expense benefits and wage loss benefits outside the scope of the agreement?

2. Did the trial court err by refusing to instruct the jury on punitive damages?

3. Did the trial court err by not holding the bar and the driver jointly and severally liable?

4. Did the trial court abuse its discretion by awarding respondent attorneys fees in connection with the mistrial?

## ANALYSIS

### I.

*Apportionment*

By special verdict the jury found that $254,000 would fully and fairly compensate Michael Erickson for his injuries. The following is an exerpt from the order showing how the trial court distributed the award:

The calculations in determining this Order are as follows:

I. Plaintiff Michael Erickson's Total Benefits Received from Allstate

| | | |
|---|---|---|
| Uninsured motorist benefits | | $200,000.00 |
| Medical-No Fault Benefits | $23,410.18 | |
| Wage Loss-No Fault Benefits | 10,793.75 | 34,203.93 |
| TOTAL BENEFITS | | $234,203.93 |

II. Jury Findings and Award

| | |
|---|---|
| Defendant Andy Mitchell | – 80% Negligent |
| Defendant Marina Bar | – 20% Negligent |
| Defendant Drift Inn Resort | – Not Negligent |

| | |
|---|---|
| Jury Damage Award | $254,000.00 |
| less Wage Loss-No Fault Benefits | (10,793.75) |
| TOTAL STIPULATED VERDICT DAMAGES | $243,206.25 |

III. Attorneys' Fees and Costs Incurred in the Mistrial

| | |
|---|---|
| Defendant Marina Bar | $1,564.00 |
| Defendant Drift Inn Resort | $1,250.00 |

IV. Total Amount Plaintiff Michael Erickson is Entitled to Recover from Defendant Marina Bar

| | | |
|---|---:|---:|
| Total Stipulated Verdict Damages | | $243,206.25 |
| less Total Benefits Received | 234,203.93 | |
| less Attorney's Fees for Mistrial | 1,564.00 | (235,767.93) |
| TOTAL RECOVERABLE AMOUNT | | $7,438.32 |

V. Total Amount Allstate is Entitled to Recover from Defendant Marina Bar for Purposes of Subrogation

| | | | |
|---|---:|---:|---:|
| Medical-No Fault Benefits | $23,410.18 | | |
| Wage Loss-No Fault Benefits | 10,793.75 | $34,203.93 | |
| times Percent of Negligence | 20% | x .20 | |
| Total Recoverable No Fault Benefits | | | $6,840.79 |
| | | | |
| Uninsured Motorist Benefits | | 200,000.00 | |
| times Percent of Negligence | (20%) | x .20 | |
| Total Recoverable Uninsured Motorist Benefits | | | 40,000.00 |
| TOTAL RECOVERABLE AMOUNT | | | 46,840.79 |

VI. Total Amount Defendant Drift Inn Resort is Entitled to Recover from Plaintiff Michael Erickson

| | |
|---|---:|
| Attorney's Fees for Mistrial | $1,250.00 |

---

The trial court applied a setoff as follows: First, it reduced the award by $10,793.75, the amount of wage loss benefits paid to appellant by his carrier, Allstate, leaving an agreed to recovery of $243,206.25. It then reduced appellant's recovery by $200,000.00, the amount of uninsured motorist benefits, and by $23,410.18, the amount of medical benefits paid by Allstate to appellant, and $10,793.75, the amount of wage loss benefits paid by Allstate to appellant. The court further reduced appellant's recovery by $1,564.00, the attorneys fees due to Marina Bar for the mistrial.

The total amount the court awarded appellant, to be paid by Marina Bar after these deductions, was $7,438.32. The total amount appellant received from all sources—insurance coverage from his own carrier and the judgment against Marina Bar—was $241,642.86, leaving appellant uncompensated for a portion of his injuries.

The trial court erroneously subtracted the wage loss figure from the judgment twice, once by deducting it from the verdict, to which the parties had stipulated, and again by including it in the "total benefits received" figure and subtracting that figure plus the attorneys fees due Marina Bar for the mistrial (the two total $245,767.93).

Respondents argue that Minn.Stat. § 65B.51, subd. 1, is authority for reduction of the verdict by the amount of benefits received. This court recently rejected that argument in *Newmaster v. Mahmood*, 361 N.W.2d 130 (Minn.Ct.App.1985), in which we held that a trial court may not reduce the verdict in a dramshop action by the amount of basic economic loss and uninsured motorist benefits received by the insured. In *Newmaster*, we quoted a Michigan dramshop case with approval:

> The liability of the dramshop defendants did not arise out of the ownership, maintenance or use of an automobile. Instead, their liability arose from their alleged unlawful selling, giving or furnishing of intoxicating liquor to a visibly intoxicated person.

*Schwark v. Lilly*, 91 Mich.App. 189, 202, 283 N.W.2d 684, 690–691 (1979), *Tebo v. Havlik*, 109 Mich.App. 413, 311 N.W.2d 372 (Mich.1981), cited in *Newmaster*, 361 N.W.2d at 135.

*Newmaster* is controlling here. In *Newmaster*, as here, there was no double recovery because the appellant was obligated by a signed subrogation agreement to repay the insurer. Respondents here argue that, if the verdict were not reduced, Allstate would have no recourse to recoup the benefits it has paid out under the subrogation agreement. This is untrue. The subrogation agreement is a valid contract and All-

state, should it become necessary, has an action available on that contract against its insured, Erickson.

■ The trial court erroneously interfered with the subrogation agreement by making a gratuitous distribution on behalf of Allstate. Allstate was not a party to the action. The subrogation agreement, although a binding contract between Erickson and Allstate, was not submitted to the jurisdiction of the trial court to approve, disapprove, or interpret. The trial court erred when it ordered Marina Bar to pay money directly to Allstate.

Clauses 1 through 4 of the agreement, though lengthy, are set out here verbatim:

1. In consideration of the payment of Two Hundred Thousand Dollars ($200,000.00) by the Company, the receipt of which is hereby acknowledged, the Undersigned hereby releases and discharges the Company from any and all liability and from any and all conractual obligation under the uninsured motorist insurance policy, Policy No. 011855 096, issued to Robert Erickson by the Company, and arising out of bodily injury sustained by the Undersigned due to an accident on or about the 25th day of July, 1981.

2. The Undersigned hereby assigns, transfers, and sets over to the Company the Company's subrogation rights and agrees to pursue recovery for said Company against the person or persons liable for the result of said accident *to the extent of the payment above made,* less one-third of said amount which shall be paid to the Undersigned as attorney's fees; and all costs and expenses incurred in making the recovery *shall be divided equally between the Company and the Undersigned.*

3. The Company agrees not to intervene in Crow Wing County Case, *Michael Erickson, Plaintiff, v. Drift Inn, Marina Bar, and Andy Mitchell, Defendants,* and the Undersigned agrees to maintain said action in his own name.

4. The Company agrees that the attorneys for Michael Erickson in *Erickson v.* *Drift Inn, Marina Bar, and Andy Mitchell* will be given full responsibility for the strategic and tactical decisions in the above case, but that the Company's attorneys be fully consulted on all matters involving the Company's interest.

(Emphasis added.)

This signed agreement set out different terms than the conclusion reached by the trial court in its conclusions of law, paragraph I:

Michael Erickson is entitled to judgment against the Marina Bar in the sum of $7,438.32, together with his costs and disbursements herein. The Court arrived at this figure by subtracting from the verdict of $254,000.00 the sum of $10,793.75 which was stipulated to by the parties prior to the submission of the case to the jury, resulting in a sum of $243,206.25. The Court then subtracted the sum of $234,203.93, which sum of money plaintiff previously received from Allstate Insurance Company for injuries sustained as a result of this accident, both in uninsured motorist benefits and no-fault benefits, resulting in the sum of $9,002.32. Finally, the Court subtracted the sum of $1,564.00, said sum representing the attorney's fees and expenses awarded to defendant Marina Bar by Judge Kalar as a result of the mistrial of this matter, leaving a total sum due to the plaintiff from the Marina Bar of $7,438.32.

The subrogation agreement only spoke to the $200,000.00 uninsured motorist benefits paid to appellant. The trial court did not take into account the provision in the agreement for a deduction on behalf of appellant Erickson for one third of the amount for attorney fees and fifty percent of the costs and expenses of pursuing respondents.

To be correct, the trial court should have found, as a result of the jury's verdict, that $254,000.00, reduced only by the stipulated wage loss benefits of $10,793.75, was payable directly to appellant.

Defendants Marina Bar and Mitchell are concerned that Allstate may have an action against them, should appellant fail to reimburse Allstate in violation of the subrogation agreement. Allstate gave up the right to pursue Marina Bar, Drift Inn, and Mitchell when it signed the subrogation agreement. Allstate's cause · of action, should appellant fail to comply with the subrogation agreement, would be against appellant, its own insured.

■ Respondents, in addition, argue that this situation would not have arisen had Allstate exercised its "absolute right to intervene" in this action. Allstate's right to intervene is not absolute. In fact, Allstate contracted away its right to intervene when it became a party to the subrogation agreement with appellant. Clauses 3 and 4 state Allstate's agreement not to intervene and provide that Michael Erickson should proceed in his own name subject to the subrogation agreement.

## II

*Punitive damages*

Appellant argues that the jury should have been instructed with respect to Mitchell's liability for punitive damages. Punitive damages are allowable only upon clear and convincing evidence that the acts of the defendant show willful indifference to the rights or safety of others. Minn.Stat. § 549.20, subd. 1 (1982).

■ Driving while intoxicated may rise to the level of willful indifference to the rights and safety of others so as to warrant punitive damages. *Hawkinson v. Geyer*, 352 N.W.2d 784, 788 (Minn.Ct.App. 1984), *Anderson v. Amundson*, 354 N.W.2d 895, 898 (Minn.Ct.App.1984). However, as in any case where a party seeks punitive damages, the trial court must first determine whether the evidence is sufficient to submit the issue to the jury. *Anderson*, 354 N.W.2d at 898.

■ Respondent argues that, since *Hawkinson* was decided after this case was tried, *Hawkinson* cannot be applied retro-

actively. The general rule is that, absent special circumstances or specific pronouncements by the overruling court that its decision is to be applied prospectively only, the decision is to be given retroactive effect. *Hoff v. Kempton*, 317 N.W.2d 361, 363 (Minn.1982) (citations omitted). The United States Supreme Court has established a three-prong test to be used in determining whether an exception to the general rule should be made:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in · question, its purpose and effect, and whether retrospective operation will further or retard its operation." * * * Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–7, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

Prior to *Hawkinson v. Geyer*, which interpreted Minn.Stat. § 549.20 (1984), punitive damages had not been expressly recoverable against drunk drivers:

Although the Minnesota Legislature has not expressly approved punitive damage awards in cases involving drunk drivers, the recent emphasis in the legislature on more effective enforcement measures against drunk drivers indicates a commitment to deter such conduct by all possible means.

*Hawkinson*, 352 N.W.2d at 788.

In light of *Hoff*, whether retroactivity is appropriate for the submission of punitive damages is unclear. Arguably, the *Haw-*

*kinson* decision was an issue "of first impression whose resolution was not clearly foreshadowed." *Chevron Oil Co.* at 106, 92 S.Ct. at 355.

■ However, we do not reach the issue of retroactivity even though the intoxicated driver's actions in this case are within the purview of *Hawkinson*. We decline to disturb the trial court's discretion and do not find clearly erroneous the court's refusal to submit the issue of punitive damages as to respondent Mitchell to the jury.

### III.

*Joint and several liability*

In this combined automobile negligence and dramshop case, the jury found Mitchell, the intoxicated driver, 80% liable and Marina Bar 20% liable, and Drift Inn Resort 0% liable. Based on that finding the trial court ordered Marina Bar to pay Allstate, appellant's insurer, $46,840.79, 20% of the benefits Allstate paid to appellant, and to pay Erickson $7,438.32. The court arrived at this figure using the following computations:

| | |
|---|---|
| $254,000.00 | jury verdict award |
| –10,793.75 | stipulated reduction for wage loss benefits received |
| –234,203.93 | total of uninsured motorist benefits ($200,000), wage loss benefits ($10,793.75), medical benefits ($23,410.18) received from Allstate |
| –1,564.00 | attorney fees from mistrial |
| $ 7,438.32 | TOTAL DUE APPELLANT |
| $234,203.93 | |
| x .20 | |
| $ 46,840.79 | TOTAL DUE ALLSTATE FROM MARINA BAR |

The trial court determined that Mitchell and Marina Bar were not jointly and severally liable, and that Marina Bar was liable to Allstate, based on Allstate's subrogation agreement with appellant, for only 20% of appellant's damages. This was error.[1]

Marina Bar's liability is governed by the Dramshop Act:

> Every * * * person who is injured in person or property, * * * or incurs other pecuniary loss by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling or bartering intoxicating liquors or non-intoxicating malt liquors, caused the intoxication of that person, for all damages sustained. * * * Actions for damages based on liability imposed by this section shall be governed by section 604.-01.

Minn.Stat. § 340.95 (1985). Mitchell's liability is governed by negligence law.

■ Common liability of two different parties may exist even when such liability is predicated on different legal theories. *Jones v. Fisher*, 309 N.W.2d 726, 728 (Minn.1981). An intoxicated driver and a liquor vendor subject to the provisions of the Dramshop Act can be found jointly and severally liable:

> When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award.

Minn.Stat. § 604.02, subd. 1 (1985). In general, parties whose negligence concurs to cause an indivisible injury are jointly and severally liable. *Maday v. Yellow Taxi Co. of Minneapolis*, 311 N.W.2d 849, 850 (1981).

■ Respondents argue that the intent of Minn.Stat. § 604.02, subd. 1 "is to not require parties who have paid their fair share to be responsible for additional contribution absent a need to provide the injured party with full recovery." Minn.Stat. § 604.02 does not limit joint tortfeasors' liability in this way. The legislative intent is for full recovery, that is the purpose of

---

1. Although we find the trial court's apportionment erroneous, the result is not 100% reimbursement to Allstate by Marina but rather, as this opinion sets out, Marina is directly liable to appellant Erickson for the entire jury verdict should Mitchell not pay. We hold that Marina's responsibility, after a stipulated mathematical correction, is payable directly to Erickson, not Allstate.

holding joint tortfeasors jointly and severally liable. *See, Pautz v. Cal-Ros, Inc.,* 340 N.W.2d 338 (Minn.1983).

The trial court erred when it ordered Marina to reimburse Allstate only for the percentage of fault the jury apportioned to it, since Marina and Mitchell are jointly and severally liable on the entire judgment. Marina Bar is liable for 100% of the judgment and has a contribution claim against Mitchell for whatever it is worth.

Marina Bar argues that, although technically Allstate is not the real party in interest, practically it is and should pay its fair share of the damages. Marina contends that it is unfair that a "marginally responsible" tortfeasor should pay more than its fair share of the damages. Apparently the trial court took this point of view when it held the parties were not jointly and severally liable for the damages.

Marina's argument, taken together with the trial court order, suggests that Allstate, as appellant's uninsured motorist carrier, should be responsible for the percentage of damages awarded against Mitchell, 80%. This would, in effect, make Allstate a liability carrier for Mitchell and, as such, jointly and severally liable with Marina Bar on the judgment.

This argument fails. An uninsured motorist policy is a private contract between the insured and the insurer. As such, it does not run to the benefit of Marina Bar. The policy was not purchased to protect Marina, it was purchased to protect appellant, the insured. Marina does not become a third party beneficiary to the uninsured motorist policy.

Marina neither paid Allstate a premium nor did it enter into the formation of the contract. Allstate did not receive a premium to provide additional coverage for insured tortfeasors, such as Marina, who are jointly and severally liable with uninsured tortfeasors.

**2.** Pierringer releases are not at issue in this case. *See Hosley v. Pittsburgh Corning Corp.,*

It is the general rule that co-tortfeasors are jointly and severally liable to injured plaintiffs. *Maday v. Yellow Taxi Co. of Minneapolis,* 311 N.W.2d 849, 850 (1981).[2]

## IV.

*Attorney fees*

Following the trial court's declaration of mistrial after the first proceeding, respondents Drift Inn Resort and Marina Bar attorney brought on a motion for attorneys fees, which the trial court granted. Appellant argues that the award is improper because it was not authorized by statute.

We agree with appellant Erickson that Minn.Stat. § 549.21 does not explicitly authorize attorneys fees for the mistrial in this instance. However, here the trial court made a finding, following respondent's motion for attorneys fees, that appellant's attorney's neglect caused the mistrial. Following a motion, the trial court has broad discretion to award attorneys fees. Rule 7(a), Code of Rules for District Courts.

This rule is analogous to rules providing sanctions for failure to provide or permit discovery in which the court is afforded discretion to assess attorney's fees. *See e.g.,* Rule 37.02(2)(e), Minn.R.Civ.P. We will not disturb the court's order here. Under these limited circumstances, the award of attorneys fees is appropriate.

## DECISION

1. The trial court erred by awarding a non-party insurance company, with whom appellant had a signed subrogation agreement, reimbursement for uninsured motorist benefits, medical expense benefits and wage loss benefits outside the scope of the agreement.

2. The trial court's refusal to submit to the jury the issue of punitive damages as to respondent Mitchell was not clearly erroneous.

364 N.W.2d 813 (Minn.Ct.App.1985) *pet. for rev. pending.*

3. The trial court erred by not holding Marina Bar and the intoxicated driver jointly and severally liable.

4. The trial court did not abuse its discretion by awarding respondent attorneys fees in connection with the mistrial.

Affirmed in part, reversed and remanded in part, with directions to the trial court to enter judgment on behalf of plaintiff against defendants Marina Bar and Andy Mitchell in the full amount of the verdict, minus only the $10,793.75 agreed to by plaintiff. Plaintiff's subrogation agreement and obligation to reimburse Allstate were not presented to this court on this appeal.