James **THORN**, Appellant,

v.

The **GLASS DEPOT** and Robert Best, Respondents.

No. C9–85–47.

Court of Appeals of Minnesota.

Aug. 27, 1985.

Review Denied Nov. 1, 1985.

Patrick W. Parmater, Minneapolis, for appellant.

Gene P. Bradt, St. Paul, for respondents.

Heard, considered, and decided by the court en banc consisting of POPOVICH, C.J., and FOLEY, SEDGWICK, LANSING, HUSPENI, LESLIE and NIERENGARTEN, JJ.

## OPINION

LESLIE, Judge.

This is a personal injury action arising from a pedestrian-automobile accident. The jury returned a special verdict finding both appellant James Thorn and respondent Robert Best negligent, but finding Thorn's negligence as the sole proximate cause of his injuries. The trial court issued its findings, conclusions of law and order for judgment in accordance with the jury verdict. Thorn appeals the trial court's denial of his motions for judgment notwithstanding the verdict or for a new trial. We affirm.

## FACTS

James D. Thorn, plaintiff-appellant, was struck on the right elbow by a truck while he was walking in a westerly direction along Highway #12 in Hennepin County. The truck, also proceeding in a westerly direction, was driven by Robert Best, defendant-respondent. Best is an employee of The Glass Depot (the Depot), who is also a defendant-respondent in this action. Best was driving a truck owned by the Depot and was acting within the course and scope of his employment at the time of the accident.

The accident occurred at approximately 6:30 in the morning of February 6, 1980, just west of Interstate Highway #494 on Highway #12 in Hennepin County, Minnesota. At the location where the accident occurred Highway #12 is a multiple-lane roadway dividing traffic traveling in opposite directions by a median strip.

On the evening of February 5, 1980 Thorn had worked a 3:00 p.m. to 11:30 p.m. shift. During his break he purchased two bottles of tequila and two quart bottles of orange juice. Thorn testified the bottles were placed in the trunk of the car he was driving. It is undisputed that when Thorn finished working that night he sat with coworkers for about one-half hour in the McCourtney parking lot and drank "two beers." Thorn and a coworker then drove around the Hopkins area for approximately

four hours. Thorn testified he had no alcoholic beverages during this time. Thorn drove the coworker back to his car at the McCourtney parking lot sometime between 3:00 a.m. and 5:00 a.m. the morning of February 6. Shortly thereafter, Thorn began to drive home proceeding westerly on Highway #12.

At a point just west of Interstate #494 the vehicle Thorn was driving stalled. Thorn had been driving in the traffic lane closest to the median strip prior to the vehicle stalling. When the vehicle's engine stalled the power steering and power brakes failed. When attempting to pull the vehicle off the roadway Thorn buried the front end into a snowbank adjacent to the left shoulder of the roadway. The vehicle came to rest in the snowbank at an angle, with the rear of the vehicle extending into the traffic lane closest to the median strip so as to preclude passage of a westbound vehicle in that lane.

After failing to restart the vehicle Thorn indicated he returned to the front seat of the vehicle to get warm. The temperature was about 10 to 20 degrees above zero. After about 15 minutes he testified he retrieved a bottle of tequila and orange juice from the trunk and drank a mixture of the same over another 15-minute period.

Thorn then set out to walk to the nearest phone located at a motel about a mile away from where the vehicle had stalled. He testified that he was unable to get the taillights of the vehicle to work and that there were no flares. He then walked with his back to westbound traffic on the left shoulder immediately off the roadway, but testified that perhaps his arm extended out into the traffic lane. He chose not to cross the median strip in order to walk facing the eastbound traffic. He had the hood of his jacket raised over his head, and did not notice the truck driven by Best until a fraction of a second before the truck struck Thorn's right elbow. The accident occurred when Thorn was only a few car lengths in front of the stalled vehicle.

Best had arrived at work at about 5:00 a.m. the morning of February 6. As was

Best's custom the truck was warmed and the windshield and other windows fully cleared before Best left the Depot. Best also completed a daily maintenance check on the truck before leaving.

Around 6:30 a.m. Best was proceeding westerly on Highway # 12 in the lane closest to the median strip at a speed of 50 m.p.h. He did not see the stalled vehicle until he was within two to three car lengths of it. The truck's high beams were not on. He swerved into the other traffic lane to avoid hitting the stalled vehicle, then swerved back into the lane closest to the median strip. While making the lane changes Best reduced his speed to an estimated 35 to 40 m.p.h. However, after he returned to his original lane Best accelerated briefly before he saw Thorn. Best didn't see Thorn until Thorn was only 10 feet in front of the truck. Contrary to Thorn's testimony, Best testified that Thorn was walking in the traffic lane. Best's testimony indicates that he attempted to avoid hitting Thorn, but the corner of the box of the truck struck Thorn's right elbow. Best also testified that after the accident Thorn smelled of alcohol, that his speech was slurred and that Thorn staggered.

The police officer who investigated the accident testified that the roadway was clear of snow, but wet because it had been recently plowed. The officer's testimony indicates his recollection that the shoulders of the roadway were also free of snow, and wet. The officer could not recall being able to discern footprints in order to determine exactly where Thorn was walking. He also testified the left shoulder was three feet wide and the right shoulder considerably wider at the scene of the accident. Inasmuch as the accident occurred at 6:30 a.m. in early February, it was still dark; however there was a light sufficiently close to the scene to dimly illuminate the roadway at that direction.

The officer's accident report indicated that Thorn had been drinking and was physically impaired, apparently due to the consumption of alcohol. The accident report indicates that Best was not driving improperly at the time of the accident.

The jury in a special verdict found both Thorn and Best negligent, but found Thorn's negligence to be the only direct cause of Thorn's injuries. Accordingly, the jury did not answer the question regarding the apportionment of negligence. Thorn appeals the trial court's denial of Thorn's subsequent motions for judgment notwithstanding the verdict or for a new trial.

## ISSUES

1. Did the trial court err when it denied appellant's motion for judgment notwithstanding the verdict?

2. Is the jury's verdict that both appellant and respondent were negligent, but that appellant's negligence was the direct cause of the accident, consistent and justified by the evidence?

3. Is the jury's determination that apellant was negligent contrary to the emergency doctrine?

4. Is the jury's determination that appellant was the direct cause of the accident contrary to the discovered peril doctrine?

## ANALYSIS

### I.

The standard to be applied in determining the propriety of granting a motion for judgment notwithstanding the verdict is whether there is ANY competent evidence reasonably tending to support the verdict. *Kantorowicz v. VFW Post, No. 230*, 349 N.W.2d 597 (Minn.Ct.App.1984).

The trial court must base its decision on the evidence as a whole, viewing all evidence in a light most favorable to the verdict. *Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 232 N.W.2d 236 (1975). Only where the facts are undisputed and reasonable minds can draw but one conclusion from them does the question for determination become one of law for the court. *Kramer v. Kramer*, 282 Minn. 58, 162 N.W.2d 708 (1968).

*Newmaster v. Mahmood,* 361 N.W.2d 130, 133 (Minn.Ct.App.1985).

The testimony is contradictory regarding whether Thorn was walking in the traffic lane or on the shoulder at the time of the accident. The determination of this fact issue is critical to a determination of negligence and the direct cause of the accident in this action. Furthermore, the testimony is contradictory regarding Thorn's physical impairment due to his admitted consumption of alcohol prior to the accident. Finally, the manner in which Thorn parked the vehicle so as to preclude the passage of traffic in that lane was due to questionable circumstances.

Inasmuch as critical factors relevant to the finding of negligence and direct cause of the accident were in dispute at trial, and competent evidence reasonably supports the verdict, this matter was not an appropriate one for judgment notwithstanding the verdict. *Id., Conover v. Northern States Power Co.,* 313 N.W.2d 397, 401 (Minn.1981).

## II.

Appellant argues that the jury's determination that Best was not a direct cause of the accident is not justified by the evidence. He asserts that Best's conduct was the direct cause of the accident in that the record indicates that Best did not keep a proper lookout, and that Best prematurely reentered the traffic lane closest to the median strip.

Upon appeal this court's scope of review is limited:

A motion for a new trial made upon the ground that the jury verdict is not supported by the evidence should be granted only in cases where the preponderance of the evidence clearly suggests jury mistake, improper motive, bias, or caprice. *Conover v. Northern States Power Co.,* 313 N.W.2d 397, 408 (Minn. 1981).

*Newmaster,* 361 N.W.2d 130, 133.

▆▆ · Viewing the evidence in a light most favorable to the verdict, there is ample evidence to support the jury's determination that Thorn's conduct was the proximate cause of the accident. The evidence indicates that Thorn had consumed an unknown quantity of alcohol prior to the accident, and may have been physically impaired due to such consumption, impeding his ability to avert the accident. There is testimony in the record that Thorn was walking not on the shoulder as he claimed, but rather in the traffic lane. Furthermore, Thorn was also walking in a westerly direction along a multiple lane divided roadway with his back to westbound traffic, a fact which makes Thorn "prima facie" guilty of negligence and in violation of state law. *Wojtowicz v. Belden,* 211 Minn. 461, 1 N.W.2d 409 (1942). *See* Minn.Stat. § 169.21(5). Finally, Best's ability to keep a proper lookout in the lane closest to the median was impaired by the vehicle Thorn abandoned extending into that lane.

▆▆ The issues of negligence and causation were properly submitted to the jury. Negligence and proximate cause are separate factors in assigning tort liability. Normally, questions of proximate cause are for the jury to decide. *Ponticas v. K.M.S. Investments,* 331 N.W.2d 907, 915 (Minn. 1983).

In establishing a test for determining when proximate cause becomes a question of law, the court in *Pluwak v. Lindberg,* 268 Minn. 524, 130 N.W.2d 134 (1964) stated:

Proximate cause, like negligence and contributory negligence, is a fact question which ordinarily must be left to the jury, and we have frequently said that it is only where different minds can reasonably arrive at one result that fact issues become questions of law. Even where there is a finding of negligence, proximate cause usually presents a jury issue.

*Id.* at 528, 529, 130 N.W.2d 138.

The court further stated in *Vanderweyst v. Langford,* 303 Minn. 575, 228 N.W.2d 271 (1975):

"The question of proximate cause is normally for the jury to decide, and its decision will stand unless manifestly and pal-

pably contrary to the evidence viewed as a whole and in the light most favorable to the verdict."

*Id.* at 576, 228 N.W.2d 272.

■ The court instructed the jury that a direct cause is a cause which had a substantial part in bringing about the accident.[1] This surely implies that not every act of negligence on the part of either a plaintiff or defendant compels an affirmative finding of causation by the jury.

Moreover, the court instructed the jury on the burden of proof that the plaintiff has the duty of proving that the defendant was negligent, *and if so*, that it was a direct cause of the accident. In so doing it advised the jury that in order to answer any question "yes" the greater weight of the evidence, or a fair preponderance of it, must support that answer. This, we submit, clearly informs the jury that answering question one as to defendant's negligence "yes" but answering "no" to question two as to whether or not such negligence was a direct cause of the accident, would not be inconsistent.

It is worth noting that the jury did return for additional instructions on direct cause and negligence and the same instruction on direct cause was given. There is no contention that that instruction used consistently over the years by trial judges was error.

■ We are not privy to the jury's thinking, but it is clear that while finding the defendant negligent in some manner, it carefully considered the instruction on causation and found that the negligence of defendant did not play a *substantial* part in bringing about the accident. There are a number of explanations for the jury's conclusion and thus, given this court's limited scope of review we will not substitute our judgment for that of the jury.

Appellant cites two cases for the proposition that when a jury finds a defendant was negligent in a personal injury action arising out of an automobile accident the court must rule the defendant was the proximate cause of the accident as a matter of law. *See Reese v. Henke*, 277 Minn. 151, 152 N.W.2d 63 (Minn.1967), and *Risacher v. Lien*, 279 Minn. 58, 155 N.W.2d 382 (Minn. 1967). This is an incorrect characterization of the holdings of *Reese* and *Risacher*. The court has not abolished the requirement of proximate cause in automobile cases. These cases require the result urged by Thorn only when reasonable persons can come to no other conclusion. A compelling argument can be made here that a reasonable man in reviewing these facts would not come to a conclusion that Best's negligence was the direct cause of the accident. Additionally, the facts in *Reese* and *Risacher* are clearly distinguishable from those in this action in that the defendants in those cases had sufficient opportunity to avoid the accidents that ensued. In *Reese*, after observing an object 500 feet away the driver neither turned out to pass nor slowed down. In the instant case, Best took evasive action as soon as he came upon a stalled, unlighted vehicle. In *Risacher*, the lead vehicle, a tractor, had a white plowing lamp on the rear and the driver of the overtaking truck took no protective action that might have avoided the collision. Like the jury and the trial court we are unable to identify any negligence of the defendant that had a substantial part in bringing about the injuries of the plaintiff.

### III.

Appellant argues that an application of the emergency doctrine to this fact situation negates the jury's finding that appellant was negligent and compels a directed verdict on appeal in appellant's favor.

---

1. It did not instruct on concurring cause and apparently no objection for failing to do so was noted. It is clear from a review of the instructions as a whole, as a jury is required to do, from a review of the usual special verdict form, from the instruction by the court on compara-
tive negligence, from the arguments of counsel, and finally from the subsequent inquiry by the jury, that the jury did in fact understand that there could indeed be more than one direct cause of an accident.

The emergency rule provides that "one, suddenly confronted by a peril, through no fault of his own, who, in the attempt to escape, does not choose the best or safest way, should not be held negligent because of such choice, unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions." *Johnson v. Townsend,* 195 Minn. 107, 110, 261 N.W. 859, 861 (1935). *See,* W. Prosser, HANDBOOK OF THE LAW OF TORTS § 33, at 168–170 (4th ed. 1971).

*Byrns v. St. Louis County,* 295 N.W.2d 517, 519 (Minn.1980).

The jury instructions regarding negligence incorporated this definition of the emergency doctrine.

Obviously, by finding Thorn negligent the jury implicitly also found that the emergency doctrine did not apply to this fact situation. Appellant admits a technical violation of Minn.Stat. § 169.21(5) but argues it was not practicable for him to walk facing oncoming traffic. This argument does not address other theories by which the jury reasonably could have found that the emergency doctrine did not apply to this fact situation.

■■■■ It is not necessary nor advisable to analyze in detail the testimony supporting or rejecting all theories relevant to the applicability of the emergency doctrine to this fact situation. Whether an individual exercises reasonable care commensurate with a sudden peril with which he is confronted is ordinarily a question of fact for the jury. *See Brady v. Kroll,* 244 Minn. 525, 530, 70 N.W.2d 354, 358 (1955). An independent review of the record indicates the jury's determination is supported by credible evidence in the record and does not appear impelled by improper motive, bias, or caprice. Thus, this matter is not appropriate for a directed verdict on the ground that the emergency doctrine applies to this situation.

## IV.

Thorn also argues that Best breached his duty to appellant pursuant to the discovered peril doctrine, and that he is entitled to a new trial regarding the apportionment of fault in this action on that basis.

■■■■ In order to apply the doctrine of discovered peril there must be a showing: (1) that both Thorn and Best were negligent; (2) that Thorn by his own negligence placed himself in a position of danger; (3) that Best had actual knowledge of Thorn's dangerous position; and (4) that after discovering Thorn's dangerous position Best could have avoided the accident by the use of reasonable care. *See Weiss v. Great Northern Railway Company,* 286 Minn. 278, 176 N.W.2d 109 (1970). If all elements of the doctrine of discovered peril are met Thorn's negligence would not be the direct cause of the accident as a matter of law.

A review of the transcript indicates the specific elements of the definition of the discovered peril doctrine were not incorporated into the definition of negligence contained within the court's instructions to the jury.

However, the trial court did give the following instruction to the jury regarding the law of negligence and the use of roadways:

One who is using the streets or road has the right to assume everyone around about him will use reasonable care and that everyone around and about him will not violate any law of the road or be negligent, and then he is entitled to go ahead on that assumption. Then if and when the contrary does appear, if someone finds someone is disobeying the law or is negligent, he must use all reasonable means at his disposal to avoid injury or damage.

■■■■ Element 1 is satisfied in that the jury found both Thorn and Best to be negligent. Apparently, for the purposes of this issue Thorn is conceding element # 2 is satisfied. Even though element # 3 was not expressly submitted to the jury arguably it is not necessary in that element # 4 was before the jury by virtue of the above-quoted instruction and is determinative of the applicability of the doctrine. Best's

negligence was expressly determined not to be a direct cause of the accident. The jury obviously concluded Best used all reasonable means at his disposal to avoid injuring Thorn, or that Best could not by the use of reasonable care have avoided hitting Thorn. Inasmuch as the determination that Best was not the direct cause of the accident is supported by competent evidence in the record, appellant's argument that the doctrine of discovered peril is applicable must fall.

### DECISION

Under the facts of this case, the jury's verdict that respondent was negligent but that his negligence was not a direct cause of appellant's injuries, was consistent and justified by the evidence.

Affirmed.

FOLEY, Judge (dissenting).

I respectfully dissent.

The statement of facts recited by the majority opinion *compels* a finding of causation under *Reese v. Henke*, 277 Minn. 151, 152 N.W.2d 63 (1967). Defendant-respondent is at least *a* concurring cause of the accident and a new trial is mandated. To hold otherwise would only serve to give blind adherence to a general proposition of law that causation is a fact issue for the jury. Every case is different.

There are cases in which a finding of negligence requires a finding of causation. Here, the jury by its special verdict found:

1. At and immediately prior to the accident of February 6, 1980, was Defendant Robert Best negligent in the operation of his motor vehicle?

_X_ Yes ___No

If your answer to question number one is yes, then answer this question:

2. Was such negligence a direct cause of the accident?

___Yes _X_ No

3. At and immediately prior to the accident of February 6, 1980, was Plaintiff James Thorn negligent?

_X_ Yes ___No

If your answer to question number three is yes, then answer this question:

4. Was such negligence a direct cause of the accident?

_X_ Yes ___No

If you answered both questions two and four, and if your answers to both questions two and four are yes, then answer this question:

5. Taking all of the negligence which contributed as a direct cause to the occurrence of the accident at 100 percent, what percentage or proportion thereof do you attribute to:

(a) Defendant Robert Best       %
(b) Plaintiff James Thorn     ___%
    Total          100%

Regardless of your handling of the above questions, and regardless of fault, answer this question:

6. What sums of money will fairly and adequately compensate Plaintiff James Thorn for damages directly caused by the accident of February 6, 1980, in the following respects:

(a) Past medical expenses to
    this date:       $6,774.66
(b) Wages lost to this date:   $17,000.00
(c) All damages not included
    in 6(a) and 6(b) above:   $82,000.00

The issue here is whether the jury answers can be reconciled in any reasonable manner consistent with the evidence and its fair inference. *Reese*, 277 Minn. at 155, 152 N.W.2d at 66.

Many of the facts in the case under review are strikingly similar to those in *Reese*. Here, respondent came upon a disabled vehicle and he turned into an unobstructed lane to avoid colliding with the vehicle. Also after passing the vehicle, respondent knew he could have continued in that same unobstructed lane, but chose to turn back into the lane where he had been driving before discovering the disabled car ahead of him. When respondent turned back into the other lane, he knew, or should have known, the party or parties

from that disabled car might be assembled nearby or walking in the area.

Lookout, speed and control were elements submitted to the jury. In *Reese*, the Supreme Court said:

> * * * the court implicitly or expressly submitted to the jury three elements of negligence with respect to Roger Henke —lookout, control, and speed. Whether the jury found that he was negligent in any one or combination of these acts or omissions, manifestly his negligence was *a* proximate cause of the accident.

*Id.* at 156, 152 N.W.2d at 67 (emphasis supplied).

It is a *conceded* fact in this case that respondent could have continued in the unobstructed lane after passing the disabled car. Had he done so, there would have been no accident or injury to this plaintiff. *Id.* at 155, 156, 152 N.W.2d at 66, 67.

For reasons not apparent in this record, the jury must have determined that plaintiff's misconduct was more serious than that of respondent. "This, however, cannot be the basis for exonerating one tortfeasor and holding the other liable." *Id.* at 156, 152 N.W.2d at 67. Plaintiff was at least entitled to have the jury consider the comparative fault of both himself and that of respondent.

The holding of *Reese* was followed in a well reasoned opinion in *Bergemann v. Mutual Service Insurance Co.*, 270 N.W.2d 107 (1978).

The holding of this court in *Betz v. Nelson*, 367 N.W.2d 922 (Minn.Ct.App.1985), does not control the decision here, although I note in passing that *Reese* is quoted with approval in *Betz*. If *Reese* is no longer to be followed, the holding of that case ought to be expressly overruled by the Supreme Court.

The jury's answer to Question 2 should be changed to "yes" as a matter of law. A new trial is required on the comparative fault issue.