Tracy Ann KETTERLING, Respondent,

v.

The SPUD BAR, INC., Appellant,

American States Insurance Company,
intervenor, Respondent.

No. C7–86–722.

Court of Appeals of Minnesota.

Dec. 30, 1986.

Review Denied Feb. 18, 1987.

Patrick R. Morley, Grand Forks, N.D.,
for respondent.

Peter E. Lind, Minneapolis, for appellant.

Duane Ilvedson, Fargo, N.D., for respondent.

Heard, considered and decided by
FOLEY, P.J., and SEDGWICK and
FORSBERG, JJ.

## OPINION

SEDGWICK, Judge.

The Spud Bar appeals from a judgment
in favor of Tracy Ketterling for $209,-
276.90 pursuant to liability under Minn.
Stat. § 340.95 (1984) (Civil Damage Act),
and from an order denying a new trial.
Appellant alleges set-off should be allowed
on the verdict amount in order to prevent a
double recovery to Ketterling since basic
economic loss and uninsured motorist benefits
have been previously paid by the insurance
carrier. Appellant also claims joint
and several liability should not be applied
to force them to pay 100% of a judgment
when their fault was judged to be 47%.
We affirm.

## FACTS

On October 2, 1983, respondent Tracy
Ketterling was seriously injured when a
stolen automobile, driven by Devin
Johnson, crashed into the side of her car as
she attempted a left turn from the westbound
lane of Grand Forks' (North Dakota)
Demars Avenue.

On October 2, Johnson spent the afternoon and evening drinking. After drinking beer at his apartment, he arrived at The Spud Bar sometime between 4:30 p.m. and 4:45 p.m. Johnson had mixed drinks until leaving the bar after 7:00 p.m. Afterward, he stole an auto and collided with Tracy Ketterling's vehicle approximately five miles from The Spud Bar. Johnson's blood alcohol content was .17.

Ketterling sued The Spud Bar under the Civil Damages Act, Minn.Stat. § 340.95. The Spud Bar later brought Johnson in as a third-party defendant. Ketterling also filed a claim against Johnson, but it was dismissed prior to trial when he filed a bankruptcy petition, invoking the automatic stay.

The jury apportioned fault at 53% for Johnson and 47% for The Spud Bar. They awarded damages for past and future medical expenses, lost income, and pain and suffering of $189,645.48. Judgment was entered for the jury verdict, plus prejudgment interests and costs, for $209,276.90. Defendant's motion for a new trial or judgment notwithstanding the verdict was denied.

### ISSUES

1. Can a liquor vendor receive a set-off from a jury verdict for basic economic loss or uninsured motorist benefits when the insurance carrier claims a subrogation interest?

2. Can a liquor vendor, with fault affixed at 47%, be held jointly and severally liable when the victim was not at fault and the uninsured motorist's fault was 53%?

### ANALYSIS

■ American States Insurance paid respondent Ketterling approximately $15,000 in basic economic loss benefits and the policy limit of $60,000 for uninsured motorist benefits. Respondent Ketterling signed a release and trust agreement in connection with payment of the $60,000 which accorded American States Insurance subrogation rights against The Spud Bar. Appellant argues the amounts paid-out to Ketterling under her insurance coverage should be deducted from the jury verdict against The Spud Bar since a set-off would effectuate a state policy against double recovery.

The Civil Damage Act (Dram Shop Act), Minn.Stat. § 340.95 (1984), provides that people injured by an intoxicated person have a right of recovery against liquor vendors who caused the intoxication.

Minn.Stat. § 340.95 was repealed in 1985 and subsumed within Minn.Stat. § 340A.801. However, Ketterling's suit was filed in early 1985, prior to the July 1, 1985 effective date of the revised statute. Minn.Stat. § 340A.801, subd. 4 (Supp.1985), denies insurers subrogation rights against liquor vendors when the rights stem from benefits paid on an automobile insurance policy. The section specifically states "provisions of section 65B.53, subdivision 3, do not apply to actions under this section."

Minn.Stat. § 65B.53, subd. 3 (1984), deals with subrogation rights under no-fault insurance.

A reparation obligor paying or obligated to pay basic economic loss benefits is subrogated to a claim based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

The section provides a subrogation right, but it may be exercised only when an insured's recovery appears to be a windfall. An insurer commonly exercises subrogation rights when coverage benefits were paid prior to a judgment which covers *all* the victim's injuries. An individual should not be allowed to benefit from his injuries; he/she should only be made whole.

A second applicable section is Minn.Stat. § 65B.51, subd. 1 (1984).

*Deduction of basic economic loss benefits.* With respect to a cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by sections 65B.41 to 65B.71, there shall be deducted from any recovery the value of basic or optional economic loss benefits paid or payable, or which would be payable but for any applicable deductible.

Appellant argues that § 65B.51, subd. 1, together with the policy against double recovery and legislative intention as represented by § 340A.801, subd. 4, can be utilized to deny an insurer subrogation rights as to both basic economic loss and uninsured benefits.

*Fox v. City of Holdingford,* 375 N.W.2d 44 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Dec. 13, 1985), confronted arguments similar to appellant's and provides an analytical framework. Minn.Stat. § 65B.51, subd. 1, the offset provision, deals with negligence actions connected with some type of motor vehicle use. Minn.Stat. § 65B.53, subd. 3, concerns subrogation rights which arise from "an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use or operation of a motor vehicle." This court interpreted the statutory interplay to mean "that the offset and subrogation provisions are mutually exclusive." *Fox,* 375 N.W.2d at 46. This court ruled in *Fox* that subrogation rights, not offset, control in cases involving statutory liability, e.g., the dram shop act. *Id.* at 47.

*Fox* relied heavily on the controlling case of *Newmaster v. Mahmood,* 361 N.W.2d 130 (Minn.Ct.App.1985). *Newmaster* considered the question of whether the verdict rendered against the liquor vendor should be reduced "by the amount of the basic economic loss benefits and uninsured motorist benefits * * * [the victim] received." *Id.* at 134. The injured party Newmaster had received uninsured motorist benefits from her carrier and had signed a subrogation agreement which conveyed subroga-

tion rights to the insurance company. The question in *Newmaster* is identical to the question raised by The Spud Bar.

Minn.Stat. § 65B.51, subd. 1, was ruled to be inapplicable since the action was based on a strict liability theory. *Id.* at 135. The use of the dram shop act precludes the invocation of the negligence-based offset provision.

> The liability of the dramshop defendants did not arise out of the ownership, maintenance or use of an automobile. Instead, their liability arose from their alleged unlawful selling, giving or furnishing of intoxicating liquor to a visibly intoxicated person.

*Id.* at 135 (citations omitted); *see also Erickson v. Hinckley Municipal Liquor Store,* 373 N.W.2d 318 (Minn.Ct.App.1985) (*Erickson* addressed a similar question to *Newmaster;* the court also found *Newmaster* to be controlling and the subrogation agreement a valid contract which prevented double recovery).

These previous decisions appear to foreclose appellant's argument. There is no reason to reinterpret the 1984 Civil Damage Act in the light of the 1985 repeal and revision of the act.

■ Appellant believes joint and several liability is inapplicable to this case based on a reading of the revised dram shop act, § 340A.801, and the inherent contradiction between the doctrine and Minnesota's policy of comparative fault. The Spud Bar argues that since it was determined to be only 47% at fault, it should not be forced to pay 100% of the jury verdict.

Comparative fault is dealt with at Minn. Stat. § 604.01, subd. 1 (1984), which reads in part:

> *Scope of application.* Contributory fault shall not bar recovery in an action by any person * * * to recover damages for fault resulting in death or injury to person * * * if the contributory fault was not greater than the fault of the person against whom recovery is sought, but any damages allowed shall be dimin-

ished in proportion to the amount of fault attributable to the person recovering.

Minn.Stat. § 604.02, subd. 1 (1984), provides for joint and several liability.

> When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award.

Although the two sections and concepts seemingly conflict with each other, they co-exist as a reflection of state policy in favor of full recovery, "the purpose of holding joint tortfeasors jointly and severally liable." *Erickson*, 373 N.W.2d at 325–26. The supreme court has consistently held that comparative fault does not prevent holding "each defendant liable for a plaintiff's total recoverable damages even when a jury finds that defendant only partially at fault." *Maday v. Yellow Taxi Co.*, 311 N.W.2d 849, 850 (Minn.1981) (footnote omitted).

> It is a well-established rule in Minnesota that parties whose negligence concurs to cause an injury are jointly and severally liable. We have consistently applied this common law doctrine of joint and several liability to the statutory scheme of comparative negligence and comparative fault, concluding that the legislature retained the doctrine in enacting the comparative negligence statute in 1969 and the comparative fault statute in 1978.

*Hosley v. Armstrong Cork Co.*, 383 N.W.2d 289, 292 (Minn.1986). This court in *Erickson* confronted issues similar to those raised by The Spud Bar and ruled that the bar, although only 20% at fault, was liable for the entire judgment. *Erickson*, 373 N.W.2d at 325–26. The bar's option was to seek contribution from the other party at fault. *Id.* at 326.

Appellant once again points to the revised dram shop as indicative of legislative intent in this area. Minn.Stat. § 340A.801, subd. 3 (Supp.1985), refers only to comparative negligence (§ 604.01) as applicable to § 340A.801. No reference is made to joint and several liability. Appellant concludes the legislature has determined the doctrine should no longer be applied to dram shop cases. The prevailing state policy and judicial emphasis stress the need for full recovery. If joint and several liability was not meant to apply, the legislature would have plainly said so. *Hosley* indicates Minn. Stat. §§ 604.01 and 604.02 can peacefully co-exist and that the two are read together, even if only comparative negligence is stated to apply.

## DECISION

Under the Civil Damage Act, Minn.Stat. § 340.95 (1984), a liquor vendor may not claim a set-off if an insurer possesses a subrogation interest. A liquor vendor may be jointly and severally liable for the judgment when the vendor's fault has been affixed at 47%.

Affirmed.