**RIVERBLUFF DEVELOPMENT COMPANY, Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, et al., Coon Rapids Properties, Respondents.**

No. C0-87-796.

Court of Appeals of Minnesota.

Sept. 29, 1987.

Jerrold M. Hartke, South St. Paul, for appellant.

Steven Z. Kaplan, Minneapolis, for Insurance Co. of North America.

Phillip J. Martini, Minneapolis, for Coon Rapids Properties.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

RANDALL, Judge.

In July 1983 Riverbluff Development Company (Riverbluff) sought to cancel a purchase agreement into which it entered with respondent Coon Rapids Properties (CRP). CRP and respondent Johnson Building Company of Minneapolis (JBC) brought an action seeking specific performance and punitive and compensatory damages. CRP and JBC sought and obtained a temporary injunction, and provided the court-ordered $1,000,000 injunction bond, upon which respondent Insurance Company

of North America (ICNA) was surety. The restraining order prevented Riverbluff's cancellation of the disputed contract for deed, and was to remain in force until final judgment in the main action on the merits would be entered. Trial on the merits commenced January 16, 1984, and final judgment was entered on August 1, 1984.

The trial court found for Riverbluff, denied CRP specific performance, and awarded Riverbluff money damages of $71,-209.84. The judgment allowed Riverbluff to proceed with cancellation of the contract for deed. The court of appeals affirmed as modified.[1] *Johnson Building Co. v. River Bluff Development,* 374 N.W.2d 187 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 18, 1985).

Riverbluff then made demand upon ICNA for certain money damages on the bond that Riverbluff claimed ICNA owed, over and above the amount of the trial court award of damages. ICNA refused payment, and Riverbluff brought this action against CRP, ICNA and JBC, CRP's general partner, seeking recovery on the bond,[2] fees and costs. On this new claim for money damages, the trial court granted CRP, ICNA and JBC summary judgment, holding that the doctrine of res judicata was applicable. Riverbluff appeals. We affirm.

## FACTS

In January 1983, Riverbluff and CRP entered into a development agreement providing for the formation of a partnership to develop the Crown Roller Mill property located in the old milling district near St. Anthony Falls. Subsequently they changed their agreement to a purchase agreement, whereby CRP would purchase the property from Riverbluff. Riverbluff was to remain a limited partner, retaining some equity in the property.

Before the purchase agreement was executed, JBC and CRP became interested in JBC's involvement both as a general partner and as general contractor. Riverbluff opposed JBC's involvement because, as general partner and general contractor, JBC could theoretically funnel profits to itself in the form of additional construction costs. Riverbluff believed JBC's involvement would eliminate competitive bidding, resulting in increased costs and reduced partnership profits. Riverbluff also saw a need for a strong "balance sheet partner," and feared JBC was not financially able to be a general partner in the project.

The purchase agreement gave Riverbluff a 20% interest in the profits and a 10% interest in losses incurred by the project. The agreement contained a clause by which CRP could assign its rights, duties and obligations without Riverbluff's consent. CRP informed Riverbluff's representatives that this clause was intended only to assign the property to the proposed Riverbluff-CRP partnership. CRP had, however, already executed and sent to JBC a letter of intent to enter into a partnership with JBC to develop the property.

In May 1983, Riverbluff sent CRP a letter purporting to cancel the purchase agreement on the ground that defaults under the agreement had not been cured. CRP sought to enjoin Riverbluff's cancellation of the agreement, but the requested preliminary injunction was denied.

On July 1, 1983, the agreed-upon date of closing, CRP demanded to close the property, and presented Riverbluff with a letter from JBC's bank, which stated the bank would certify sufficient funds to meet the closing terms of the purchase agreement, as well as a limited partnership agreement which CRP claims complied with the purchase agreement. Riverbluff refused to close, contending the letter from the bank

---

1. The modification was slight and did not involved the central issue of Riverbluff's right to cancel the contract for deed. The modification simply deleted $9870 from the $71,209.84 in damages awarded by the trial court.

2. Riverbluff claims that respondents owe further money damages not recovered in the first trial, including carrying costs of the property; attorney fees related to the temporary restraining order, temporary injunction, and trial; lost wages of Gross and Smith; and fire damages to the building.

and the proposed partnership agreement were inadequate.

On July 12, 1983, Riverbluff sent another notice of cancellation. On August 3, 1983, the trial court, after respondents posted the required injunction bond, issued a restraining order to prevent Riverbluff's attempted cancellation of the contract for deed until the issue could be tried on the merits. That restraining order was in force until judgment was entered in CRP and JBC's action for specific performance and compensatory and punitive damages.

On October 21, 1983, prior to the trial, the mill was extensively damaged by fire. In its counterclaim to CRP and JBC's action for specific performance and damages, Riverbluff sought compensatory damages of $3,880,000 and punitive damages of $2,000,000. Respondents argue that the issue of fire damage to the mill was before the trial court, either at the time of trial or at the motion for amended findings or new trial, and is thus barred from further consideration under the doctrine of res judicata.

After trial on the merits, the court entered judgment against CRP and JBC, and awarded Riverbluff the following damages:

| | |
|---|---|
| Services of Charles Gross, Jr. | $28,200.00 |
| Services of Alan Smith | 26,800.00 |
| Interest on liens & judgments | 6,339.84 |
| Security costs | 5,500.00 |
| Insurance costs | 4,370.00 |
| Total | $71,209.84 |

The trial court also determined that JBC was entitled to the return of funds it paid as earnest money, holding costs, payment on the contract for deed, and to return of an uncashed check. Riverbluff moved for amended findings, requesting punitive damages, including attorney fees and fire damages. The motion was denied. CRP and JBC, after successfully resisting Riverbluff's motion for amended findings, appealed the money damage award against them and their loss of the right to complete the contract for deed purchase. This court affirmed the trial court in all respects, but modified the money damages downward by $9870, finding the award for security and insurance costs improper. *Johnson Building Co.*, 374 N.W.2d 187.

Riverbluff then made demand upon ICNA for money damages on the injunction bond. ICNA refused to make any payment. In July 1986, Riverbluff brought this action on the injunction bond naming as defendants ICNA, JBC, and CRP. Respondents moved for summary judgment. On January 27, 1987, the trial court entered summary judgment for respondents, finding Riverbluff had already litigated damages. The court held that, under the doctrine of res judicata, the prior judgment bars appellant's present litigation for further damages.

## ISSUE

Did the trial court err by entering summary judgment, dismissing appellant's new claim for damages on the injunction bond, on the basis of res judicata?

## ANALYSIS

### Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03; *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The moving party has the burden of proof. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981). On review, this court must view the evidence in the light most favorable to the party against whom the motion was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

When the critical evidence is documentary or undisputed, this court need not defer to the trial court's assessment of the meaning and credibility of the evidence. *Plaisted v. Fuhr*, 367 N.W.2d 541, 545 (Minn.Ct.App.1985). "Where the facts are undisputed, the trial court's conclusions of law do not bind this court." *Madden v. Home Insurance Co.*, 367 N.W.2d 676 (Minn.Ct.App.1985).

Appellant contends the trial court erred by granting summary judgment, claiming there are genuine issues of material fact as

to what damages were actually caused by the issuance of the injunction. Appellant admits the trial court did not make any findings of fact as to damages or causation. The court made its decision solely on the basis of res judicata. Issues of causation and damages are questions of fact. *Thorn v. Glass Depot*, 373 N.W.2d 799, 803 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 1, 1985). However, they do not arise unless the trial court erred in determining whether the issues raised are res judicata.

*Res Judicata*

■ Res judicata bars a second suit for the same claim by parties or their privies. *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn.1984).

Minnesota law recognizes two aspects of the doctrine of res judicata: (1) merger or bar, and (2) collateral estoppel. *See Hauser v. Mealey*, 263 N.W.2d 803, 806 (Minn.1978). The first, also known as estoppel by judgment, serves as an absolute bar to a subsequent suite on the same cause of action both as to matters actually litigated and as to other claims or defenses that might have been litigated. *Howe v. Nelson*, 271 Minn. 296, 301, 135 N.W.2d 687, 691 (1965). *Roseberg v. Steen*, 363 N.W.2d 102, 105 (Minn.Ct.App.1985). *See also Youngstown Mines Corp. v. Prout*, 266 Minn. 450, 466, 124 N.W.2d 328, 340 (1963) (quoting *Veline v. Dahlquist*, 64 Minn. 119, 121, 66 N.W. 141, 142 (1896) (judgment on merits constitutes absolute bar to second suit for same cause of action, and is conclusive between parties and privies as to matters litigated and matters that could have been litigated).)

■ A former judgment is a bar in a subsequent action if the same evidence will sustain both actions. *Melady-Briggs Cattle Corp. v. Drovers State Bank*, 213 Minn. 304, 309, 6 N.W.2d 454, 457 (1942). However, the defense of res judicata is to be allowed with caution, and must rest upon a more solid basis than mere speculation as to what was actually adjudicated in the prior action. *Wolfson v. Northern States Management Co.*, 221 Minn. 474, 479, 22 N.W.2d 545, 548 (1946).

■ Appellant contends the trial court erred by granting summary judgment on the basis of res judicata, claiming the damage issues raised in this action differ from those raised in the previous litigation. Appellant claims that here application of res judicata and collateral estoppel is improper because it would work an injustice. *McCarty v. Budget Rent-a-Car*, 282 Minn. 497, 165 N.W.2d 548 (1969).

Appellant claims that the issue of damages caused by the injunction was not adjudicated in the prior action. Appellant contends the prior main action dealt only with fraud, and the trial court adjudicated only the issue of damages caused by the fraud.

Appellant contends it is now properly litigating damages resulting from the issuance of the injunction.

While damages from a wrongful issuance of an injunction may be determined in an injunction suit, they are recoverable (unless the writ was procured by malice) only by action on the bond. *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 507, 110 N.W.2d 348, 353 (1961).

Respondents claim appellant raised all issues of damages, including injunction related damages, in the original action, in which appellant prevailed. Respondents contend that because all issues were placed before the trial court, the court's silence on the issue of injunction related damages constituted a determination that no separate damages resulted from the injunction. *See Sanvik v. Maher*, 280 Minn. 113, 158 N.W.2d 206 (1968). Respondents argue that appellant, who had the burden of proof on each separate claim for damages, did not separate before the trial court, in the main action, the issue of damages into two distinct categories, but placed before the trial court all issues of damages in its counterclaim and presentation of evidence.

In this second action, appellant alleges the following damages incurred as a result of the injunction: $44,000 carrying costs of mill property during the injunction period; $60,000 attorney fees related to temporary restraining order, preliminary injunction

and trial; lost wages of Charles Gross, Jr. ($28,000) and Alan Smith ($26,000) during the proceedings; and fire damage to the building of $1,100,000.

Respondents claim appellant "squarely placed before the trial court" the issue of injunction related damages in its unsuccessful motion for amended findings. In granting summary judgment for respondents on this injunction bond claim, the trial court found

> the trial court [in the first action] declined to amend its findings in order to reallocate the $1.1 million fire loss which Riverbluff claimed to have resulted from the entry of the temporary injunction. The Court of Appeals likewise declined to find any causal connection between the injunctive relief obtained and the damages sustained by Riverbluff.

Respondents argue that, between the damages awarded against them at trial and the trial court's denial of appellant's motion for amended findings, all damage related matters have been litigated. Accordingly, this money damage litigation is barred by the doctrine of res judicata. After examining the entire record and this court's involvement in the previous appeal, we agree.

### Carrying costs

The carrying costs of the property appellant alleges it incurred during the pendency of the injunction include:

| | |
|---|---|
| Insurance and security | $6,000 |
| Mortgage | 3,600 |
| Contract for deed payments | 16,100 |
| Real estate tax | 12,000 |

The trial court in the previous action awarded appellant $5500 for security costs and $4370 for insurance costs. On appeal, this court reversed the award of insurance and security costs on the grounds that

> it is unclear from the record what causal link the trial court found between the security and insurance costs and the misrepresentations.

3. Defendant at trial is appellant here.

This court held the assertion that had the agreement gone forward as planned, the carrying costs would have been prevented, was speculative given the uncertainty of the project's financing. The trial court in the instant action held appellant has litigated the issue of carrying costs. We agree. This court's holding on the previous appeal, that these costs are speculative and therefore cannot be recovered, is binding and cannot be relitigated.

### Attorney fees

Riverbluff now seeks attorney fees allegedly arising out of issuance of the injunction. At trial on the original action, appellant requested attorney fees. Appellant did not separate its claim for injunction related attorney fees. At the first trial, appellant introduced Defendant's Exhibit "Y," [3] a hand drawn sheet listing appellant's claimed damages under the single word heading of "Fraud." The exhibit did not contain any accompanying specific explanation as to each item of damages, and is somewhat unclear. Nevertheless, it was presented to the trial court in this action for consideration of the issue of what damages were covered in the first trial.

Defendant's Exhibit "Y" presented at the first trial appears to set out a total claim of $354,810, including claims of a net loss on the building after the fire; building carrying costs between the date the contract for deed sale was supposed to close in the summer of 1983 and the end of the trial in January 1984; Riverbluff's out of pocket costs for consulting fees; and approximately $71,060 for attorney fees. Although the top of Exhibit "Y" has the heading, "Fraud," notations next to the names of the attorneys indicate that at the original trial appellant had claims for attorney fees related to the injunction and not just fraud.[4] The total attorney fees asked for at the first trial include claims for legal work on behalf of Riverbluff, both before and after the proposed July 1st closing date, and claims for legal work on the injunction.

4. Next to the attorney names and their amounts on defendant's Exhibit "Y" was a notation: "(INJ)."

The notations do not specify whether the charges were for legal work opposing respondents' successful motion for an injunction in August 1983, or for appellant's successful lifting of that injunction during the trial in January 1984. After review of all materials including this exhibit, we will not disturb the trial court's finding that these injunction related damage claims were covered in the first trial.

*Gross' and Smith's services*

In the previous action, appellant was awarded $28,200 for the services of Charles Gross, Jr., and $26,800 for the services of Alan Smith. The award was affirmed on appeal. In the present action, appellant claims:

> That Charles D. Gross lost over $28,000 of wages and consulting fees and Al Smith lost over $26,000 of wages and consulting fees during the injunctive period.

The present claim is identical to that previously adjudicated in appellant's favor, and is res judicata.

*Fire damage*

Appellant claims it sustained $1,100,000 in damages as a result of the fire to the mill building. In its motion for amended findings, appellant raised the issue of the fire damages:

> 31. That as a direct result of the fire, River Bluff will incur additional damages in the building because of the fire and the inability of the plaintiffs to put River Bluff in the same position it was in before the injunction and the fire. * * * The amount of those damages is $1,100,-000.

One of the proposed amended conclusions of law was:

> 9. River Bluff is entitled to judgment against Coon Rapids and Johnson Building Company in the amount of $1,100,000 because of the injunction and fire of October 21, 1983.

Respondents claim the entry of the injunction and the fire loss suffered by Riverbluff are causally unconnected. In the transcript of the hearing on the motion to amend findings, the trial court found the existence or nonexistence of the contract was unconnected with the fire. Further discussion took place:

> Mr. Hartke: Well, if there had not been a Temporary Restraining Order, then there would have been the development of that building.

> The Court: That's highly speculative, isn't it? I don't even know if your client has enough money to develop this property.

We find appellant also placed the issue of injunction related fire damages before the trial court. The trial court's denial of the motion for amended findings constitutes a final adjudication of the issue, and bars further litigation.

### DECISION

The trial court did not err by holding appellant's present action on the injunction bond, based on its claim that there are new damage issues to consider, is barred as having been litigated in the original action on the merits.

Affirmed.