Bruce E. ANDERSON, et al.,
Appellants,

v.

LLOYD'S FEED SERVICE,
Respondent.

No. C3–88–2231.

Court of Appeals of Minnesota.

Aug. 1, 1989.

Michael Charles Krikava, Samuel L. Hanson, Briggs and Morgan, Minneapolis, for Bruce E. Anderson.

Kevin O'Connor Green, Mankato, for Jane Anderson.

John M. Sheran, Farrish, Johnson & Maschke, Mankato, for Lloyd's Feed Service.

Heard, considered, and decided by WOZNIAK, C.J., and CRIPPEN and SHORT, JJ.

## OPINION

WOZNIAK, Chief Judge.

Appellants Bruce and Jane Anderson brought an action against respondent Lloyd's Feed Service for breach of an implied warranty of fitness for a particular purpose. The jury found Lloyd's Feed had breached its implied warranty and the Andersons had suffered damages. The trial court initially adopted these findings, but later granted Lloyd's Feed's motion for judgment notwithstanding the verdict (JNOV). The Andersons argue that JNOV was inappropriate because there was competent evidence of breach of warranty and damages. We agree and reverse.

## FACTS

Appellants Bruce and Jane Anderson began raising hogs on their family farm in 1982. They intended to develop a large scale farrow to finish operation. To finance this operation, they obtained a $42,-

000 operating loan and a $200,000 capital loan.

The Andersons originally ground their own corn to make feed. Feed is a mixture of ground corn and added concentrate. In August 1984, they ran out of corn and could not make their own feed. They contracted with Lloyd's Feed to supply them with feed.

Lloyd's Feed agreed to provide feed so long as the Andersons procured their own corn. The Andersons paid $0.10 per bushel premium for high quality corn at a nearby elevator. This corn was placed in a holding bin with corn from other farmers. Lloyd's Feed ground corn from this holding bin and mixed it with concentrate to make feed. This feed was delivered to the Andersons from August 15, 1984 to October 20, 1984.

Many of the Andersons' pigs died between August 1984 and November 1984, from reabsorption, abortion, and severe cases of common diseases. The herd was particularly damaged by the death of 73 of the 123 sows on the Anderson farm.

In September 1984, the Andersons consulted Dr. Timothy Loula, a hog specialist, about the alarming death rate among their pigs. Dr. Loula, a veterinarian, is a clinical professor of hog medicine at the University of Minnesota. He visited the Anderson farm frequently to discover the source of the problem. He investigated viruses, bacteria, stray voltage, management practices, and water quality, but concluded none of these caused the deaths.

Dr. Loula suspected the feed might be the cause of the Andersons' problem. On November 12, 1984, the Andersons sent a sample of their feed to the Minnesota Valley Testing Lab in New Ulm, Minnesota. A test revealed a high and unbalanced mineral content, including particularly high levels of zinc. The test also indicated a mold content that was too numerous to count.

Mold may produce microtoxins, such as aflatoxins. Because of the presence of mold, Dr. Loula advised that a second test for aflatoxins be conducted. The Andersons sent a sample of farrowing feed to the lab on November 19, 1984. The test revealed no B2, G1, and G2 aflatoxins in the farrowing feed. Nevertheless, it indicated an undetermined amount of Mycotoxin B1, an aflatoxin. The lab requested a sample of at least 200 grams to determine the amount of Mycotoxin B1 present. The Andersons, however, had already used all of the feed.

On April 2, 1985, the Andersons brought an action for breach of an implied warranty of fitness for a particular purpose. Minn. Stat. § 336.2–315 (1988). The jury returned a verdict for the Andersons. The jury specifically found Lloyd's Feed had sold defective feed which caused the deaths, that the Andersons sustained $169,931 in damages, and that they owed $7,125 on account to Lloyd's Feed. The trial court issued findings of fact and conclusions of law adopting the jury's verdict, but subsequently granted Lloyd's Feed's motion for JNOV. The Andersons appeal.

## ISSUES

1. Was there competent evidence to support the jury's determination that Lloyd's Feed sold defective feed which caused the deaths of the Andersons' pigs?

2. Was there competent evidence to support the jury's findings on damages?

## ANALYSIS

■ The trial court granted Lloyd's Feed's motion for JNOV. A motion for JNOV will not be granted as long as there is "ANY competent evidence reasonably tending to support the verdict." *Thorn v. Glass Depot*, 373 N.W.2d 799, 802 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 1, 1985) (emphasis in original). The evidence must be viewed in the light most favorable to the verdict. *Id.* We apply the same standard as the trial court in evaluating a motion for JNOV. *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 14 (Minn.1979).

■ 1. The Andersons alleged Lloyd's Feed breached an implied warranty of fitness for a particular purpose. *See* Minn. Stat. § 336.2–315 (1988). To establish such

a warranty claim, a buyer must prove (1) the existence of a warranty, (2) a breach of that warranty, and (3) a causal link between the breach and the alleged harm. *Imdieke v. Blenda–Life, Inc.,* 363 N.W.2d 121, 124 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Apr. 26, 1985). The jury found the Andersons had demonstrated each of these elements, yet the trial court granted JNOV because it concluded no competent evidence of a breach or a causal link was presented.

Dr. Loula testified that the mold, minerals, and aflatoxin interacted to make the feed defective and to cause the pigs' deaths. Respondents contend on appeal that, although there was competent evidence of mold and minerals, there was no competent evidence of aflatoxin. The trial court concluded there was no competent evidence of aflatoxin because the Minnesota Valley Testing Lab report was unreliable.

The court found the report was unreliable because there was no evidence that the samples came from Lloyd's Feed. Bruce Anderson testified, however, that the samples were from Lloyd's Feed since there was no other feed on his farm at that time. His testimony is competent evidence the tested feed came from Lloyd's Feed.

The trial court also concluded the report was unreliable because Dr. Loula had never seen an aflatoxin analysis and he did not know what testing procedures were used. Dr. Loula testified that the lab report showed at least five parts per billion of aflatoxin because of the testing screen used. In contrast, Dr. Hagler, a mycotoxicologist with experience in aflatoxin testing, testified that the lab report was unreliable and nonsense.

The trial court discounted Dr. Loula's testimony essentially because of inadequate foundation. Although Lloyd's Feed initially objected to Dr. Loula's testimony based on lack of foundation, it later withdrew this objection. Once such an objection is withdrawn, the credibility of a witness becomes a jury question. It was therefore inappropriate for the trial court to conclude *post hoc* that Dr. Loula's testimony was unreliable.

Evidence in the record other than the lab report indicates aflatoxin was present. Dr. Loula testified that pigs going off feed and exaggeration of common diseases through immune system suppression are both signs of aflatoxin. He testified that both of these symptoms were present on the Andersons' farm. The lab report and these symptoms provide competent evidence of aflatoxin.

The Andersons' theory was that the interaction of mold, minerals, and aflatoxin rendered the feed defective and caused the deaths. Some competent evidence existed to demonstrate the presence of each of these elements in the feed. The trial court hence erred in granting Lloyd's Feed's motion for JNOV.

■ 2. The jury found the Andersons had sustained $169,931 in damages, including $75,000 for pig losses and $72,410 for additional interest on obligations. The additional interest component of damages included $60,221 in additional interest on bank accounts and $12,188 in additional interest on business accounts. The jury also found the Andersons owed Lloyd's Feed $7,125 for the unpaid balance of their feed account. In granting Lloyd's Feed's motion for JNOV, the trial court concluded that competent evidence only supported damages of $60,000 for pig losses and $6,000 for additional interest on obligations. The Andersons appeal these reductions, arguing there was competent evidence to support the original jury findings.

Bruce Anderson testified that it would cost between $60,000 and $80,000 to replace the pigs. Dr. Anthony, the Andersons' damages expert, testified the value of the pigs was $90,997. This testimony is competent evidence to support the jury's finding that the pig loss damages were $75,000.

The Andersons had a number of accounts with local businesses. They had planned to pay off these accounts by June 1, 1985, but could not because of their pig losses. Jane Anderson testified that the additional interest incurred between June 1, 1985 and the

date of repayment or the date of trial was $12,188. There was, therefore, competent evidence to support the jury findings of $12,188 in additional business account interest.

The Andersons also were making interest payments on a $42,000 operating loan and on a $200,000 capital loan. Due to the loss of their pigs, the Andersons were unable to make interest payments and the bank remade the loans. The operating loan was remade at $60,221, including $18,221 in additional interest. The capital loan was similarly remade to include $51,638 in additional interest. The total additional interest added to the two bank loans was $69,859. Thus, there was some competent evidence justifying the jury's award of $60,221 in additional bank account interest.

Lloyd's Feed argues that allowing recovery of both lost profits and additional interest is a double recovery because interest must be paid out of profits. However, the most common meaning of "profit" is revenue less expenses such as interest. *Black's Law Dictionary* (5th ed. 1979). There is no indication that the jury interpreted "profit" to mean anything other than revenue less expenses. Moreover, since lost profits and additional interest were two separate amounts for the jury to find, it is unlikely the jury included additional interest in the lost profit figure.

There was competent evidence to support the jury's damage findings of $75,000 for the pigs, $12,188 for additional business account interest, and $60,221 for additional bank account interest. The trial court hence erred in reducing the damage award when granting the motion for JNOV. We therefore conclude the jury's findings of $162,805 in damages less offset was appropriate.

## DECISION

The trial court erred in granting JNOV. The jury's verdict is hereby reinstated.

Reversed.